## 1IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

LORI ANN MORRIS,          )
                            )
        PLAINTIFF,       )
                            )
V.                         )     CIVIL CASE NO. 3:05-CV-962-T
                            )
FLORIDA TRANSFORMER,    )
EDWARD NEAL THOMPSON, ET AL., )
                            )
        DEFENDANT.    )

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Comes now the Plaintiff and Responds to Defendant's Motion for Summary Judgment and Brief in support thereof as follows:

1. Defendant's Motion for Summary Judgment is due to be denied based on the fact that genuine issues as to material facts remain in this case.

2. Defendant is not entitled to judgment as a matter of law.

3. This response is supported by the following:

    a. Plaintiff's Brief (Below)

    b. Plaintiff's Complaint (Doc. no.1).

    c. Plaintiff's Amended Complaint (Doc. no. 20).

    d. Excerpts from the Alabama Uniform Traffic Accident Report of 9/2/04 ("accident report") (Exhibit 1).

    e. Affidavit of Edward L. Robinson, Ph.D. Accredited Accident Reconstructionist ("Robinson's affidavit") (Exhibit 2).

    f. Report of Edward L. Robinson, PhD. (Exhibit 3).

g.  Excerpts from the deposition of Edward L. Robinson (Exhibit 4).

h.  Affidavit of Andre LeBleu, Engineer (Exhibit 5).

i.  Truck Service Record (Exhibit 6).

j.  New Hire Form (Exhibit 7).

k.  Medical Examination Report (Exhibit 8).

l.  Federal Register (Exhibit 9).

m.  Medical Examiner's Certificate (Exhibit 10).

n.  Dart Transit Accident Report (Exhibit 11).

o.  Alabama Dept. of Public Driver's History (Exhibit12).

p.  Driver Road Test (Exhibit 13).

q.  Driver's Duty Status Record (Exhibit 14).

r.  Statement of Violations (Exhibit 15).

## STATEMENT OF FACTS

This case arises out of a collision between two tractor-trailer rigs on September 4, 2004 at approximately 3:25 a.m., while both were traveling north on I-85 in Macon County, Alabama. Both tractor trailers were loaded with cargo: Morris with Titanium and Thompson with Transformers.  (Ex. 1- Accident Report, p.4,5).

For an unknown reason, Morris' tractor trailer swerved off the road, into the median, struck a road sign, a drainage ditch and came back up the embankment onto the North bound lane of I-85.  (Accident Report, p. 3).  Morris' tractor trailer rolled over onto the driver's side.  When the truck came to rest, part of the tractor was on I-85 and part of the trailer was off the highway and onto the median. (Accident Report, p. 4).

Thompson, while driving for Defendant, Florida Transformer, Inc. ("FTI"), was accompanied by another employee of FTI, William Earl Tidwell.  (Tidwell Affidavit, Defendant's Exhibit C).  Thompson was driving approximately 70 mph.  (Thompson Affidavit, Deft's Ex. B, p. 2).  Thompson's headlights were on.  (Thompson's Affidavit, Defendant's Exhibit B).  The road was dry (Ex.1 -Accident Report, p. 2).  Thompson's tractor trailer collided with Morris' disabled tractor trailer.  The point of impact was in the left lane of the two lanes of I-85 North.  (Ex.1 -Accident Report, p. 3).  Thompson left no skid marks before colliding with the tractor portion of Morris' tractor trailer rig.  (Ex. 1-Accident Report, p. 3).  After the accident, the cab of Morris' rig was knocked loose from the tractor portion of the rig.  (Ex.1-Accident Report, p. 3).  When Thompson's trailer came to rest, the tractor portion was in the left lane and the trailer portion was in the right lane.  (Accident Report, p. 5).  The portion of I-85 where the accident occurred has an emergency lane to the right of the right lane.  (Accident Report, p. 5).

Morris' Administratrix, Lori Morris("Plaintiff"), filed suit against Thompson and FTI, in which she alleged several causes of action, including (1) Count I-Wrongful Death; (2) Count II-Negligent Hiring and Retention; and (3) Count III - Negligent Entrustment (Doc. No. 1).  The Complaint claims Thompson negligently and/or wantonly allowed his tractor trailer to collide with Morris (¶6); he failed to maintain proper control of his rig by failing to bring it to a safe stop (¶9); he failed to maintain proper look-out for Morris' vehicle (¶10); he was inattentive (¶9); he had the last clear chance to avoid the accident (¶12); and that he violated State and Federal Regulations when he allowed his rig to collide with Morris' (¶13).

Plaintiff claimed that Florida Transformer had negligently maintained the vehicle driven by Thompson (¶8); it had negligently hired and retained Thompson (¶16); and that it had negligently entrusted the vehicle to Thompson. (¶21).

Plaintiff filed an Amended Complaint in which she specified the statutes which she contended that Defendant Thompson and FTI violated.  (Doc. No. 20).

The only issue that Plaintiff can ferrett out of  Defendant's Motion for Summary Judgment is (1) whether Thompson's vehicle had any defects; and (2) whether Thompson could have avoided the accident.  ("To the contrary, there is no evidence whatsoever of any defect in the tractor or trailer being operated by Thompson, and there is no admissable evidence that Thompson saw, or could have seen the Morris overturned vehicle in time to avoid this unfortunate accident." Defendant's Brief, pp. 3-4).

## II.  Defendant is not entitled to Summary Judgment on Plaintiff's Maintenance Claim.

On the issue of defect in the tractor or trailer being operated by Thompson, the only evidence submitted by Defendant is the Affidavit of Thompson in which he stated "there was

nothing wrong with the headlights on our truck or the brakes on our truck . . . ." (Dft.'s Ex. B, p. 2).  Defendant submitted no predicate as to whether or not Thompson had done a pre-trip inspection required by the Federal Motor Carrier's Safety Regulations.  (FMCSR) Section 392.7 (49 CFR).  Likewise, Thompson gave no predicate as to whether or not he was familiar with the maintenance that had been performed on the tractor trailer.

In response to requests for production seeking maintenance records on the vehicle driven by Thompson, Defendant produced a service record on truck eleven (Exhibit 6).  The service history on the truck is not credible, since each service date, spanning over eleven months, shows the same mileage.  The last replacement of break shoes, drum kits on the rear drive axle was eleven months earlier.  Apparently no adjustment of brakes had been made within eleven months.

Edward L. Robinson, Ph.D., an Accident Reconstructionist, observed in his report: "remarkably absent from both the accident report and the Alabama State Trooper's scene photos are any visible skid marks from the Peterbuilt tractor or trailer it was towing... prior to this severe impact, the Peterbuilt truck left no physical skid marks, this is more probably than not because the driver did not break or because the truck's brakes were adjusted and improperly or the truck's breaks malfunctioned.  (Exhibit 3, p. 5).  In Dr. Robinson's Affidavit, he concluded:

> "The examination of the accident site and the review of the
> photographs of the accident scene taken by the Alabama State
> Patrol show that there is no physical evidence of any visible skid
> marks from the Peterbuilt tractor or the trailer is was towing and
> the absence of such skid marks evidence shows that it is more
> probable than not that the Peterbuilt driver was traveling at least 70
> mph at the moment he collided with the Kenworth tractor and that
> the Peterbuilt driver more probably than not did not apply his
> breaks and/or that his breaks more probable than failed to work
> because they were adjusted improperly or suffered some significant
> mechanical or design defect."  (Exhibit 3).

Defendants have not submitted any credible evidence that the vehicle was properly maintained. They have not submitted any Affidavit from any person who maintained the vehicle. The Affidavit of Thompson shows no predicate that he had inspected the brakes and knew that they were properly maintained. Thompson was hired by FTI three days before the accident and has submitted no evidence to support a contention that he was familiar with the maintenance of the breaks and headlights on the truck he drove for FTI. (Exhibit 7). Thompson gave no evidence that he had tested the breaks in this type of situation before. Since Defendant has not shown that a genuine issue of maintenance does not exist, summary judgment is inappropriate.

**III.   "Defendant is not Entitled to Summary Judgment on its claim that "there is no admissable evidence that Thompson saw, or could have seen the Morris' overturned vehicle in time to avoid this unfortunately**." (Dft's. Brief, p. 4).   In support of this contention, Defendant has submitted the Affidavit of Thompson and his passenger Tidwell. The Affidavit of Thompson stated that "all of a sudden I saw in my headlights what appeared to be a vehicle tires out across the road, and I said, "Oh my God" and slammed on the breaks." (Thompson Affidavit, Dft's. Ex. E, p. 2). In the Tidwell Affidavit, Tidwell stated:

> "All of a sudden, I saw what appeared to be the bottom of an overturned turned truck lying across both lanes of traffic. Almost immediately Neal popped up the breaks.... at the time we hit the breaks, we were in the right bound lane traveling approximately 65-70 mph."

Neither Affidavit controverted the representations contained in the accident report that the road was dry. Neither Affidavit controverts the conclusion by Dr. Robinson that there were no skid marks. Neither Affidavit indicated the existence of any driving maneuver other than breaking to avoid the accident, despite the existence of an emergency lane to the right of Morris'

overturned vehicle. (Accident Report, p. 3).

On the other hand, Dr. Robinson has testified that Thompson was "outrunning his headlights," which left insufficient time to apply his breaks or engage in an avoidance maneuver. (Ex. 4, Dr. Robinson depo. excerpts, p.7). Dr. Robinson concluded that the accident could have been avoided. (Ex. 4, Dr. Robinson depo. excerpts, p.7).

**IV.  Plaintiff has substantial Evidence of Negligence.**

The Code of Alabama Section 32-5A-170, provides as follows:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. Consistent with the foregoing, every person shall drive at a safe and appropriated speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

In Thompson's affidavit, he claimed that "it was a very dark night." (Defts. Ex. B, p. 2). The foregoing Alabama Code Section 32-5A-170 requires that, given the conditions of the roadway, Thompson must drive in a manner consistent with the condition of the roadway such as to avoid possible hazards in the road, such as Morris' overturned vehicle. Thompson did not have on high beams. and drove too fast for the conditions. (Ex. 4, Robinson Depo., p.4-7). It is clear, by this accident, Thompson drove in a negligent manner.

Alabama case law holds that the violation of a statute is prima facie evidence of negligence when (1) the statute was enacted to protect a class of persons at which Plaintiff is a member; (2) thee injury is the type contemplated by the statute; (3) the defendant violated the statute; and (4) the Defendant's statutory violation must have proximately caused the injury. *Parker Building Service Co., Inc. v. Lightsey,* 925 So. 2d 927, 931 (Ala. 2005). It is clear that

Section 32-5A-170 is designed to prevent injury from vehicular collisions.  In the case at bar, Section 32-5A-170 was violated when Thompson "outran" his headlights and did not pay due regard for the unlighted condition and possibly "damp" condition of the roadway.  (See Defts., Ex. C, Tidwell aff., p.2).  The injury sustained by Morris was the type of injury sought to be prevented  by the statute.

Plaintiff contends that Thompson violated the Federal Motor Carriers Safety Regulations, Section 391.41 (b)(3) requires that a driver is disqualified if he "has" no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control. Thompson has a history and diagnosis of diabetes that has required for treatment.  On his last medical certification date prior to this accident, on April 26, 2004, Thompson was diagnosed with Type II Diabetes Mellitus.  (Ex. 8, p.1).  Thompson had a blood sugar reading of 2000!  (Ex. 8, p. 2).  Thompson was declared "Temporarily disqualified due to...Diabetes." Thompson was given and prescribed Glucofage and Glucotrol to take when his blood sugar level got above 165. (Ex. 8, p. 1).

Although Section 391.41 provides for an exemption, Thompson has presented no evidence that he was exempt.  This exemption requires examination by a board certified Endocrinologist (who is knowledgeable about diabetes).  (Ex. 9, p. 3).  Medical examiner's certificate issued to Thompson, was issued by "Barbara Elliott," a Registered Nurse.  (Ex.10, 18). The Federal Motor Carriers Safety Administration (FMCSA), established "the current standard for diabetes in 1970 because several risk studies indicated that diabetic drivers have a higher rate of accident involvement than the general population."  (Ex. 9, p. 2).

Likewise, to obtain exemption, Thompson must submit evidence that he has a driving record for a prior three year period that "contains no involvement in an accident for which the

applicant contributed to the cause of the accident." (Ex. 9, p. 3). Thompson was involved in an accident on June 14, 2004, less than three months before the accident, when he contributed to the accident, which was DOT reportable. (Ex. 11).

Thompson was further disqualified to be a driver due to his driving record, having had three serious violations within a three year period, in violation of 49 CFR Section 383.51. Serious traffic violations is considered to be a violation involving speed more than fifteen miles above a posted limit. 49 CFR Section 383.51.

The driving history of Thompson shows that he had three serious violations within three years of hire: (1) An accident in Dothan, Alabama on August 28, 2002; (2) Speeding-69 in a 45 mph zone on May 9, 2003; and (3) a chargeable accident on June 2, 2004 involving injury. (Driver's Report, Ex. 12 and Accident Report, Ex. 11). Although had his fourth serious violation with the subject accident on September 2, 2004, he was not taken out of service.

Section 391.31 FMCSR requires that a driver obtain a Certificate of Completion of Road Test before driving. Thompson had not completed a road test at the time of the accident. (Ex. 13). Although the test report states that Thompson complete his "Day test on 9/2/04," Thompson did not drive during the day light hours on 9/2/04. (Ex. 13 and Ex. 14).

Section 391.1.27 FMCSR requires a driver to disclose his list of violations. (49 CFR Section 391.27). Thompson did not disclose his violations for the past three years as required by this statute. (Ex. 15).

Section 396.3 FMCSR required Thompson to make a pre-trip inspection of the vehicle. (49 CFR Section 392.7). Thompson did not make the pre-trip inspection required by this section.

FTI had a concurrent responsibility to make sure that Thompson was medically qualified (Section 391.41); that Thompson disclosed his violations for the past three years (Section

392.27); to insure that Thompson successfully completed a driver's road test for allowing him to

drive the tractor trailer (Section 391.31); to insure that Thompson not engaged in three serious

traffic violations within three years (Section 383.51); that he was in possession a proper medical

examiner's certificate (Section 391.64); that he submitted to post accident drug and alcohol

testing within two hours (Section 382); and that Thompson made a pre-trip inspection of his

vehicle (Section 392.7) (FMCSR, 49 CFR). Florida Transformer failed to insure compliance

with these regulations prior to the subject accident.

Had FTI successfully performed its duties, it would not have hired nor retained

Thompson. It negligently and/or recklessly failed to supervise Thompson to insure that all

regulations were complied with prior to the accident. Defendant's summary judgment motion

does not seek summary judgment on Plaintiff's claim against FTI for negligent hiring,

supervision or retention. Thus, summary judgment on these would be inappropriate since

Defendant has failed to insure that there are no genuine of issues of disputed facts on these

issues. See *Turnes v. AmSouth Bank,* 36 F. 3d 1057, 1062 (11th Cir. 1994).

## IV. Defendant's Case Authority is Inapplicable.

Defendant argues several cases in support of its claim that the accident could have been

avoided. It first argues the case of *Martin v. Arnold*, 643 So. 2d 564 (Ala. 1994), for the

proposition that "while a motorist is negligent if he fails to discover a vehicle that he reasonably

could have discovered in time to avoid injury (citation omitted), "Martin did not rebut Arnold's

evidence with substantial evidence indicating that Arnold could have discovered Mrs. Martin's

car soon enough to avoid the collision." (Dft's. Brief, p. 8). The Martin case inapplicable for

two reasons: (1) The facts are much different from the facts at bar; and (2) contrary to *Arnold,*

Defendant, in this case, has submitted substantial evidence that the accident could have been

avoided.

The facts of *Arnold* makes it inapplicable: on a rainy afternoon, Martin's automobile, was struck from behind by a truck driven by Powell, which caused Martin's car to travel across the median onto oncoming traffic and a collide with Arnold's van. *Martin,* at 565. The Court concluded that "*Martin* did not rebut *Arnold's* evidence with substantial evidence indicating that Arnold could have discovered Ms. Martin's car soon enough to avoid the collision." (*Martin* at 565).

Martin's vehicle was not stationary, as was Morris', but was traveling toward Arnold when the collision occurred. Also, Martin was traveling in the wrong direction (south bound) in the north bound lane at the time of the accident. (*Martin,* at 565). The facts of this case are too distinguishable to be applicable to the case at bar.

*Martin* is also inapplicable due to the fact that, in the case at bar, unlike *Martin*, the Plaintiff has submitted substantial evidence that the Defendant could have avoided the accident. Dr. Robinson testified that the accident could have been avoided. The absence of any skid marks from a fully loaded seventy-two thousand pound vehicle suggests that either Thompson did not apply his breaks, as he testified, or applied them woefully late, such that no skid marks exists. (Ex. 1, Accident Report, p. 3,5). Dr. Robinson also testified that Thompson was outrunning his headlights. (Ex. 4, Robinson depo. excerpts, p. 7).

Next, Defendant cites *Latham v. Redding,* 628 So. 2d 490 (Ala. 1993). As before, *Latham* is also inapplicable on both the facts and the ruling. Factually, Latham's intestate was killed when she "suddenly turned left within "thirty-five to forty feet" of Redding's tractor trailer, which was traveling at approximately 35 mph in a 35 mph zone. *Latham* at 494-95. In the case at bar, Morris' truck was stationary and should have been visible in time to avoid the accident,

but for the fact Thompson was outrunning his headlights. (Ex. 4, Robinson's depo. excerpts, pp. 4-7). In *Latham* a witness saw the tractor trailer driver engage in a maneuver to avoid the accident and apparently applied his breaks. *Latham,* at 494. In this case, no collision evading maneuver was employed.

*Latham* is further inapplicable due to its holding that "Plaintiffs failed to meet their burden of presenting substantial evidence that this was an 'unavoidable accident' from Redding's point of view." *Latham,* at 494. In this case, Plaintiff has submitted substantial evidence by the testimony of Dr. Robinson that in his opinion as an accident reconstructionist, Thompson could have avoided this accident. (Ex. 4, Robinson's depo. excerpts, p. 7).

Next the Defendant argues the case of *Plenkers v. Chappelle,* 420 So. 2d 41 (Ala. 1982). Plenkers is likewise inapplicable to the case at barr due to its facts. In Plenkers, the Plaintiff stopped his vehicle in the wrong lane of the road and was standing in front of the only working head light on his vehicle when he was struck by the Defendant. (*Plenkers,* at 42). The case suggests that it was "very dark" and that by standing in front of the only working headlight, Plenkers was obscuring the light. (*Id).* Plenkers case went to trial and the trial judge rejected the "subsequent negligence" or "last clear chance" charged. *Plenkers,* at 43. The charge was rejected because "Appellant did not address the second element of subsequent negligence (to use all the means at his command and known to skillful [drivers]...to avert damage), nor did he introduce evidence at trial indicating that the Appellee had reasonable opportunity and necessary time to avert the accident by use of due care."

*Plenkers* is materially different from the case at bar. In *Plenkers,* the Plaintiff engaged in active negligence by parking on the wrong side of the road and by blocking the one remaining headlight. In the case at barr, Morris' vehicle was going in the right direction of the road and

Defendants presented no evidence of negligence on the part of Morris.

   *Plenkers* is also inapplicable due to the fact that, unlike the Plaintiff in *Plenkers*, Plaintiff introduced evidence that the driver could have avoided the accident.  (Ex. 1, Robinson depo. excerpts, p. 7).  More importantly, summary judgment was not granted in *Plenkers*.  Plenkers' case went to trial.  The court observed "it is the duty of the jury to try the facts and apply those facts to the law." *Plenkers,* at 44.  The Plaintiff, herein, has presented substantial evidence to create a disputed fact of whether Thompson could have avoided the accident.  Summary judgement is inappropriate.

   Lastly, Defendant cites the case of *Baker v. Helms's,* 527 So. 2d 1247 for the proposition that "if a motorist, without any fault of its own, is confronted with a sudden emergency, he is not 'required to exercise the same presence of mind as would a prudent person under more deliberate circumstances.'" (Defts. Brief, p. 11).  As Defendant has noted, Baker is a "scintilla of evidence" case not a "substantial evidence" case.  Nevertheless, *Baker* is inapplicable to the case at bar.  In *Baker* the Plaintiff was guilty of active contributory negligence, by darting out behind a car parked in the north bound lane, as Helms was traveling south bound.  The case went to trial on negligence, however, the judge granted judgment not withstanding verdict in favor of Defendant and conditionally granted a new trial.  The court found that the Plaintiff had been contributorily negligent. *Baker,* at 1244.

   In the instant case, Morris is not charged with contributory negligence.  Likewise, Morris was not moving, but was stationary.  In *Baker,* the parked car obscured the Plaintiff vision to the north and the defendant's view of the plaintiff. *Baker,* at 1242.  In the instance case, there is no claim that Thompson's view was obscured by any object.

   More importantly, the court in Baker observed "the question of contributory negligence is

normally one for the jury.  Since negligence is a jury question, summary judgment is

inappropriate.  In the instant case, Defendant has created a jury question as to whether Thompson

could have avoided the collision.  (Ex. 4, Robinson depo., excerpts, p.7).

Defendants also cite the case of *Sharpe v. Evans,* 646 So 2d 134 (Ala. Civ. App. 1994)

and S*hows v. Donnell Trucking Company,* 631 So 2d 1010 (Ala. 1994).  Neither of these cases

are applicable because each of them involve a Plaintiff whose vehicle was moving in the

direction of the Defendant at the time of the collision.  *Shows,* at 1010; *Sharpe,* at 134.

### V.  Summary Judgment on Plaintiff claim of Wantoness is due to be denied.

Section 6-11-20(b)(3) Code of Alabama (1975), defines wantonness as "conduct which is

carried on witha reckless or conscious disregard for the right or safety of others."  Wantonness

has been defined by the Alabama Supreme Court as:

> "The conscious doing of doing some act or the omission of some
> duty while knowing of the existing conditions and being conscious
> that, from doing or omitting to do an act injury will likely or
> probably result."

*Scott v. Villegas,* 723 So. 2d 642, 643 (Ala. 1998), citing *Alfa Ins. Co. v. Roush,* 723 So.

2d 1250 (Ala. 1998).  "The actor's knowledge may be proved by showing circumstances form

which the fact of knowledge is reasonable inference; it need not be proved by direct evidence."

Scott at 643 citing *Ex parte Anderson,* 682 So. 2d 467, 469 (Ala. 1996); *Hamme v. CSX Transp.,*

*Inc.,* 621 So. 2d 281, 283 (Ala. 1993).

The accident report shows that the speed limit at the site of the subject accident was 70

mph.  (Ex. 1).  Thompson has asserted that he was driving the limit of "70 mph".  (Thompson

Aff., p. 2).  In the case of *Hornady Trucking v. Meadows,* 847 So 2d 908, 916 (Ala. 2002), the

Alabama  Supreme Court stated that a driver can be wanton, even when driving at the posted

speed limit, when conditions in the road dictate a slower speed. "This court has held that while speed alone does not amount to wantoness, speed, coupled with other circumstances may amount to wantoness." *Hornady,* at 916. The fact that this was a very dark night would mean that Thompson should drive below the posted speed limit. It should also dictate that he should use his high-beams, which he did not use.

In evaluating a summary judgment this Court must contrue the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). The accident report in this case suggests that the point of impact between Thompson's tractor and Morris' cab was in the left lane of I-85 North. (Ex. 1, p. 3). The two lane together are twenty-four feet wide. (*Id*). The evidence suggests that the right lane was not entirely blocked as asserted by Thompson and Tidwell. More importantly, the emergency lane was not blocked. Thompson failed to stop or slow his tractor significantly to engage in an accident avoidance maneuver by using the emergency lane to go around Morris' vehicle. Dr. Robinson concluded in his deposition testimony that this accident could have been avoided. (Ex. 4, Robinson depo. excerpts, p.7).


In *Hicks v. Dunn,* 819 So 2d 22, 23-24 (Ala. 2001), the Alabama Supreme Court stated "we reviewed the evidence in a light most favorable to the none movant, and we determined whether the party with the burden of proof has produced sufficient evidence to require a jury determination." In *Honaday Truck Lines v. Meadows,* 847 So 2d 908, 911 (Ala. 2002), the Alabama Supreme Court held that "the ultimate question is whether or not non-movant has presented sufficient to allow the case or the issue to be submitted for a factual resolution."

For purpose of wantoness, in *McDougal v. Shadrix,* 534 So 2d 228,231 (Ala. 1998), a

post-scintilla case, the Alabama Supreme Court admonished: "wantoness should be submitted to the jury unless there is a total lack of evidence from which the jury could reasonably infer wantoness."

In *Monroe v. Brown,* 307 F. Supp. 2d 1268 (M. D. Ala. 2004), the United State District Court for the Middle District of Alabama analyzed a rear end collision with a stopped vehicle as follows: "Section 32-5A-89(a)...instructs that the driver of the vehicle trailing another vehicle must...maintain sufficient control and distant between the two vehicles so as to be able to stop safely should the driver of the leading decide that it is safer to stop rather than proceed...." (*Monroe,* at 1275). Although the facts of the instant case does not suggest that Morris made a conscience decision to stop, the principal applies in this case when one vehicle was trailing another. In *Monroe*, the Defendant truck driver rear-ended Plaintiff's pick-up truck as Plaintiff stopped at a yellow light, which Defendant thought Plaintiff was going through. From these facts, the court found sufficient wantoness to submit it to the jury. *Monroe,* at 1276.

## CONCLUSION

Based on the foregoing arguments and authorities, this court should deny Defendant's Motion for Summary Judgment and allow this case to proceed to trial.

Respectfully submitted,


/s/ Henry L. Penick
Henry L. Penick
Attorney for Plaintiff


**OF COUNSEL**
H. L. Penick & Associates, P.C.
319 17th Street North, Suite 200
P.O. Box 967
Birmingham, AL 35201-0967

Telephone: (205) 252-2538
Fax: (205) 251-0231

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served this the 23rd day of June, 2006, by placing same in the United States Mail, first-class postage prepaid and properly addressed as follows:

W. Evans Brittain
Ball, Ball, Matthews & Novak, P.A
2000 Interstate Park Drive
Suite 204
P.O. Box 2148
Montgomery, AL 36102-2148


/s/ Henry L.Penick