**EXHIBIT 4**

```
                                                          1

 1            THE UNITED STATES DISTRICT COURT

 2           FOR THE MIDDLE DISTRICT OF ALABAMA

 3                    EASTERN DIVISION

 4
     LORI ANN MORRIS,
 5
              Plaintiff,
 6
     Vs.                           CIVIL ACTION NO.
 7
                                   3:02-CV-962-T
 8   FLORIDA TRANSFORMER,
     EDWARD NEAL THOMPSON, et al.
 9
              Defendants.
10

11

12            * * * * * * * * * * * *

13
     EXCERPT OF THE DEPOSITION OF EDWARD L. ROBINSON,
14
     taken pursuant to stipulation and agreement
15
     before Haley A. Phillips, Certified Shorthand
16
     Reporter and Commissioner for the State of Alabama at
17
     Large, in the Law Offices of Henry Penick,
18
     Birmingham, Alabama, on Thursday, June 22, 2006,
19
     2002, commencing at approximately 10:05 a.m.
20

21            * * * * * * * * * * * *

22

23
```

```
                                                          2

 1                    APPEARANCES

 2

 3   FOR THE PLAINTIFF:

 4   Henry Penick, Esq.
     Attorney at Law
 5   Birmingham, Alabama
```

```
 6   FOR THE DEFENDANT:

 7   W. Evans Brittain, Esq.
     Richard Broughton, Esq.
 8   Ball, Ball, Matthews & Novak
     2001 Interstate Park Drive
 9   Montgomery, Alabama

10

11

12

13

14

15

16

17

18

19

20

21

22

23
```

                                                                    3

```
 1                    STIPULATION

 2        It is hereby stipulated and agreed by and

 3   between counsel representing the parties that the

 4   deposition of EDWARD L. ROBINSON is taken pursuant

 5   to the Federal Rules of Civil Procedure and that

 6   said deposition may be taken before Haley A.

 7   Phillips, Certified Shorthand Reporter and

 8   Commissioner for the State of Alabama at Large,

 9   without the formality of a commission, that

10   objections to questions other than objections as to
```

2

```
11   the form of the question need not be made at this
12   time but may be reserved for a ruling at such time
13   as the said deposition may be offered in evidence
14   or used for any other purpose by either party
15   provided for by the Statute.
16        It is further stipulated and agreed by and
17   between counsel representing the parties in this
18   case that the filing of said deposition is hereby
19   waived and may be introduced at the trial of this
20   case or used in any other manner by either party
21   hereto provided for by the Statute regardless of
22   the waiving of the filing of the same.
23        It is further stipulated and agreed by and
```

                                                                4

```
 1   between the parties hereto and the witness that the
 2   signature of the witness to this deposition is
 3   hereby waived.
 4              * * * * * * * * * * * *
 5                   EDWARD L. ROBINSON
 6   The witness, after having first been duly sworn to
 7   speak the truth, the whole truth and nothing but
 8   the truth testified as follows:
 9
10
11
12
13
14
15
16
```

3

```
                                                              1

 1   Q.   Was there anything that you read in the
 2        affidavit that you took exception to, in
 3        either Mr. Thompson's or Mr. Tidwell's
 4        affidavits?
 5             MR. PENICK:  Let me object to the
 6                  form of the question until
 7                  he's shown the affidavits.  He
 8                  doesn't have a photographic
 9                  memory to remember everything
10                  that they said in their
11                  affidavits.
12   Q.   Do you remember anything that you took
13        exception to?
14             You read them yesterday?
15   A.   Yeah.  No, I don't remember anything that I
16        think is misstated or wrong.  There may or
17        may not be.  He could have been going more
18        than 70.  He could have been going 65.  But
19        I think Mr. Thompson himself said that he
20        was outrunning his lights, because he said
21        I couldn't see the truck in time to stop.
22        And if you're driving too fast for the
23        range of your lights, regardless of what's

                                                              2

 1        in the road, you're outrunning your lights.
 2   Q.   Are you an --
 3   A.   He made that statement.
 4   Q.   Are you on expert on the range of
 5        headlights from a Peterbilt?
```

4

```
 6  A.  No.
 7  Q.  Have you done any investigation, research
 8      in this case to determine the range of the
 9      headlights on the Peterbilt?
10  A.  No.  But he said he was outrunning them.
11  Q.  Where in his affidavit did he say -- You're
12      talking about his statement that he could
13      not see the truck in time to avoid the
14      collision.  You've interpreted that to mean
15      he's saying he was, quote, outrunning his
16      lights?
17  A.  Right.
18  Q.  Have you done -- In this case, have you
19      done any work to determine at what distance
20      away from the Kenworth vehicle that vehicle
21      would have been visible to an oncoming
22      driver of --
23  A.  No.
```

                                                                3

```
 1  Q.  -- a Peterbilt truck?
 2  A.  No, not -- not for a driver of a Peterbilt
 3      nor for this specific overturned truck
 4      case.
 5  Q.  It's your opinion -- Is it your opinion
 6      today that any person who fails to avoid
 7      hitting an object in the highway at night
 8      is outrunning their lights?
 9  A.  For a stationary object in the highway in
10      front of them, yes, I would say they are.
```

```
11   Q.   Is there anybody else that shares that
12        opinion?
13   A.   Not based on the way they drive.  But the
14        statements in the literature, Paul Olson's
15        book, for example, the Alabama statute all
16        say that you have your vehicle under
17        control so that you can avoid or stop for
18        objects within the range of your lights.
19   Q.   Have you ever testified in any other cases
20        to the contrary?
21   A.   I don't recall.  I know that we talked
22        earlier about a truck case with a man who
23        was wearing dark clothing.  But he stepped
```

                                                                    4

```
 1        out in front of the truck as I recall, so
 2        it wasn't a matter of something that was in
 3        the road and there as a stationary object.
 4   Q.   Are you aware of any studies or tests done
 5        by anyone with facts similar to this case
 6        to determine the perception/reaction and
 7        avoidability of an accident of this type?
 8   A.   I'm not familiar with specific pieces of
 9        data in the literature.  I'm sure that
10        Muttart's Drive 3 has some data with some
11        similarity to this.  Since there are
12        hundreds of data points in his research, if
13        not thousands -- I think it's in the
14        thousands.  No, I don't -- I don't know
15        that somebody has put an upside down truck
16        or an overturned truck on a test strip and
```

6

```
17          tried to look for perception and reaction

18          on an overturned truck.

19

20

21

22

23


                                                            5

 1                    EXAMINATION

 2   BY MR. PENICK:

 3   Q.   Doctor, I have one question.  Do you have

 4        an opinion based upon reasonable -- a

 5        reasonable degree of accident

 6        reconstruction certainty whether Edward

 7        Thompson, the driver of the Peterbilt,

 8        could have avoided this accident?

 9              MR. BROUGHTON:  Object to the

10                   form.

11   A.   Yes.

12   Q.   What is that opinion?

13   A.   Since that if he is, in fact, braking and

14        slowing down as he approaches the Morris

15        truck -- I can't keep them separate.  But

16        as he approaches the Morris truck, there

17        was an emergency lane and space beyond that

18        that he could have steered onto.  And I

19        think that the light pattern indication is

20        not an accurate representation where the

21        tractor was located after the overturn and
```

7

```
22       that he could have gone around the Morris
23       vehicle.
```

                                                                    6

```
 1   Q.  Okay.  What is the significance of absence
 2       of skid marks in this case?
 3   A.  That he either had defective brakes or that
 4       he didn't get on the brakes until very
 5       shortly before the impact.  In other words,
 6       he hadn't had his brakes on long enough to
 7       cause the wheels to stop rotating and heat
 8       up the contact with the pavement and leave
 9       marks.
10           MR. PENICK:  That's all at this
11               time.
12
13
14
15
16
17
18
19
20
21
22
23
```