# EXHIBIT 4

```
                                                          1

 1              THE UNITED STATES DISTRICT COURT

 2            FOR THE MIDDLE DISTRICT OF ALABAMA

 3                     EASTERN DIVISION

 4

    LORI ANN MORRIS,
 5
           Plaintiff,
 6
    Vs.                              CIVIL ACTION NO.
 7
                                     3:02-CV-962-T
 8  FLORIDA TRANSFORMER,
    EDWARD NEAL THOMPSON, et al.
 9
           Defendants.
10

11

12           * * * * * * * * * * *

13

    EXCERPT OF THE DEPOSITION OF EDWARD L. ROBINSON,
14

    taken pursuant to stipulation and agreement
15

    before Haley A. Phillips, Certified Shorthand
16

    Reporter and Commissioner for the State of Alabama at
17

    Large, in the Law Offices of Henry Penick,
18

    Birmingham, Alabama, on Thursday, June 22, 2006,
19

    2002, commencing at approximately 10:05 a.m.
20

21           * * * * * * * * * * *

22

23


                                                          2

 1                       APPEARANCES

 2

 3  FOR THE PLAINTIFF:

 4  Henry Penick, Esq.
    Attorney at Law
 5  Birmingham, Alabama
```

```
 6   FOR THE DEFENDANT:

 7   W. Evans Brittain, Esq.
     Richard Broughton, Esq.
 8   Ball, Ball, Matthews & Novak
     2001 Interstate Park Drive
 9   Montgomery, Alabama

10

11

12

13

14

15

16

17

18

19

20

21

22

23


                                                          3

 1                    STIPULATION

 2          It is hereby stipulated and agreed by and

 3   between counsel representing the parties that the

 4   deposition of EDWARD L. ROBINSON is taken pursuant

 5   to the Federal Rules of Civil Procedure and that

 6   said deposition may be taken before Haley A.

 7   Phillips, Certified Shorthand Reporter and

 8   Commissioner for the State of Alabama at Large,

 9   without the formality of a commission, that

10   objections to questions other than objections as to
```

2

```
11   the form of the question need not be made at this
12   time but may be reserved for a ruling at such time
13   as the said deposition may be offered in evidence
14   or used for any other purpose by either party
15   provided for by the Statute.
16        It is further stipulated and agreed by and
17   between counsel representing the parties in this
18   case that the filing of said deposition is hereby
19   waived and may be introduced at the trial of this
20   case or used in any other manner by either party
21   hereto provided for by the Statute regardless of
22   the waiving of the filing of the same.
23        It is further stipulated and agreed by and
```

                                                                    4

```
 1   between the parties hereto and the witness that the
 2   signature of the witness to this deposition is
 3   hereby waived.
 4              * * * * * * * * * * * *
 5                   EDWARD L. ROBINSON
 6   The witness, after having first been duly sworn to
 7   speak the truth, the whole truth and nothing but
 8   the truth testified as follows:
 9
10
11
12
13
14
15
16
```

3

1

```
 1   Q.   Was there anything that you read in the
 2        affidavit that you took exception to, in
 3        either Mr. Thompson's or Mr. Tidwell's
 4        affidavits?
 5             MR. PENICK:  Let me object to the
 6                  form of the question until
 7                  he's shown the affidavits.  He
 8                  doesn't have a photographic
 9                  memory to remember everything
10                  that they said in their
11                  affidavits.
12   Q.   Do you remember anything that you took
13        exception to?
14             You read them yesterday?
15   A.   Yeah.  No, I don't remember anything that I
16        think is misstated or wrong.  There may or
17        may not be.  He could have been going more
18        than 70.  He could have been going 65.  But
19        I think Mr. Thompson himself said that he
20        was outrunning his lights, because he said
21        I couldn't see the truck in time to stop.
22        And if you're driving too fast for the
23        range of your lights, regardless of what's
```

2

```
 1        in the road, you're outrunning your lights.
 2   Q.   Are you an --
 3   A.   He made that statement.
 4   Q.   Are you on expert on the range of
 5        headlights from a Peterbilt?
```

4

```
 6   A.   No.
 7   Q.   Have you done any investigation, research
 8        in this case to determine the range of the
 9        headlights on the Peterbilt?
10   A.   No.  But he said he was outrunning them.
11   Q.   Where in his affidavit did he say -- You're
12        talking about his statement that he could
13        not see the truck in time to avoid the
14        collision.  You've interpreted that to mean
15        he's saying he was, quote, outrunning his
16        lights?
17   A.   Right.
18   Q.   Have you done -- In this case, have you
19        done any work to determine at what distance
20        away from the Kenworth vehicle that vehicle
21        would have been visible to an oncoming
22        driver of --
23   A.   No.
```

                                                          3

```
 1   Q.   -- a Peterbilt truck?
 2   A.   No, not -- not for a driver of a Peterbilt
 3        nor for this specific overturned truck
 4        case.
 5   Q.   It's your opinion -- Is it your opinion
 6        today that any person who fails to avoid
 7        hitting an object in the highway at night
 8        is outrunning their lights?
 9   A.   For a stationary object in the highway in
10        front of them, yes, I would say they are.
```

```
11   Q.   Is there anybody else that shares that
12        opinion?
13   A.   Not based on the way they drive.  But the
14        statements in the literature, Paul Olson's
15        book, for example, the Alabama statute all
16        say that you have your vehicle under
17        control so that you can avoid or stop for
18        objects within the range of your lights.
19   Q.   Have you ever testified in any other cases
20        to the contrary?
21   A.   I don't recall.  I know that we talked
22        earlier about a truck case with a man who
23        was wearing dark clothing.  But he stepped
```

                                                              4

```
 1        out in front of the truck as I recall, so
 2        it wasn't a matter of something that was in
 3        the road and there as a stationary object.
 4   Q.   Are you aware of any studies or tests done
 5        by anyone with facts similar to this case
 6        to determine the perception/reaction and
 7        avoidability of an accident of this type?
 8   A.   I'm not familiar with specific pieces of
 9        data in the literature.  I'm sure that
10        Muttart's Drive 3 has some data with some
11        similarity to this.  Since there are
12        hundreds of data points in his research, if
13        not thousands -- I think it's in the
14        thousands.  No, I don't -- I don't know
15        that somebody has put an upside down truck
16        or an overturned truck on a test strip and
```

6

```
17        tried to look for perception and reaction
18        on an overturned truck.
19
20
21
22
23
```

                                                                5

```
 1                    EXAMINATION
 2   BY MR. PENICK:
 3   Q.   Doctor, I have one question.  Do you have
 4        an opinion based upon reasonable -- a
 5        reasonable degree of accident
 6        reconstruction certainty whether Edward
 7        Thompson, the driver of the Peterbilt,
 8        could have avoided this accident?
 9             MR. BROUGHTON:  Object to the
10                  form.
11   A.   Yes.
12   Q.   What is that opinion?
13   A.   Since that if he is, in fact, braking and
14        slowing down as he approaches the Morris
15        truck -- I can't keep them separate.  But
16        as he approaches the Morris truck, there
17        was an emergency lane and space beyond that
18        that he could have steered onto.  And I
19        think that the light pattern indication is
20        not an accurate representation where the
21        tractor was located after the overturn and
```

7

```
22        that he could have gone around the Morris
23        vehicle.
```

6

```
 1   Q.   Okay. What is the significance of absence
 2        of skid marks in this case?
 3   A.   That he either had defective brakes or that
 4        he didn't get on the brakes until very
 5        shortly before the impact. In other words,
 6        he hadn't had his brakes on long enough to
 7        cause the wheels to stop rotating and heat
 8        up the contact with the pavement and leave
 9        marks.
10             MR. PENICK: That's all at this
11                  time.
12
13
14
15
16
17
18
19
20
21
22
23
```

# EXHIBIT 5

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

*SWORN AFFIDAVIT*
*OF*
*BOARD CERTIFIED ELECTRICAL ENGINEER*

Please know by these presents that on this __31__ day of __MARCH__ in the year 2005 did come and appear before the undersigned Notary Public in and for the Parish of East Baton Rouge in the State of Louisiana, Mr. Andre E. Lebleu, a duly licensed and Certified Electrical Engineer whose address is LAPTEC Engineering Services 12030 Lakeland Park, Suite 109, Baton Rouge, Louisiana 70809, who did declare depose and say the following:

1. That he is a Board Certified Electrical Engineering duly licenced by the Professional Engineering Boards in Arkansas, Florida, Louisiana and Texas.

2. That he is registered with and certified with the National Council of Examiners for Engineering and Surveying (NCEES) as an Electrical Engineer and as a fully accredited member in good standing.

3. That he is registered and certified by the Institute of Electrical Engineers (IEEE) as a fully accredited member in good standing.

4. That he has reviewed and examined all evidence gathered by the Alabama State Police (Accident investigation report and on site photographs and that gathered by Accident Reconstructionist Dr. Edward L. Robinson which consisted of photographs of the scene, photographs of both vehicles (the two tractor-trailers), photographs of the cab of the 1998 Kenworth Tractor (outside and inside), aerial photographs of the accident area from the U.S. Geological Survey, and a forensic map of the map of the accident area created by Accident Reconstructionist Dr. Edward L. Robinson as a scale diagram of the area, Kenworth manufacturing data on the electrical systems of the 1998 Kenworth Tractor and the findings and opinion of Dr. Edward L. Robinson, Board Certified Accident Reconstruction Expert.

5. That after reviewing and personally examining the above data he has arrived at opinions and conclusions that are based upon standard methodologies accepted and utilized throughout the Electrical Engineering Profession and that his conclusions arise naturally from the application of widely validated and accepted concepts and are stated within a reasonable degree of certainty as a Professional Board Certified Electrical Engineer.

6. That his detailed examination and review of the aforementioned data gathered by the Alabama State Police and that gathered by Accident Reconstructionist and Physist Dr. Edward L. Robinson, P.D., reveals that both vehicles (the 1998 Morris Kenworth tractor-trailer and the Thompson's Peterbuilt tractor trailer would have necessarily had their headlights on while traveling on the highway and it is more probable than not that after experiencing the rollover all or substantially all of the Kenworth truck lights and trailer lights would have remained on and remained visible.

SWORN AFFIDAVIT OF MR. ANDRE BLEU
March 31, 2005
Page 2 of 2

7. That manufacturers data from Kenworth Truck Company confirms that the batteries in this type (1998 Kenworth tractor) of tractor are designed and mechanically installed to be held in place so as to prevent any movement and any disconnection. For this reason and given the ultra-securing structures that were in place it is more probable than not that the batteries and wiring was maintained and was still connected to the power source after the rollover event and remained on and connected until the collision impact by the 1995 Peterbuilt tractor trailer which totally knocked the 1998 Kenworth tractor aloose from its trailer.

8. That because the manufacturer's electrical schematics show that the lighting for the tractor trailer is routed within the structure of the cab or tractor it is more probable than not that the tractor and trailer lights were on and clearly visible with the attendant tractor-trailer and remained on and visible until the collection by the 1995 Peterbuilt.

9. That my personal examination and review of the pictures of the interior of the 1998 Kenworth reveal that interior indicating lightning filaments were still intact even after the collision by the 1995 Peterbuilt tractor. This finding enables me to surmise to a reasonable degree of professional electrical engineering certainty that the exterior lights of the 1998 Kenworth Cab and trailer were more probable than not intact and operating until the impact collision with the 1995 Peterbuilt tractor-trailer which tore or disabled the 1998 Kenworth Tractor Cab from its trailer.

10. Pursuant to my review of the Accident Reconstruction Expert and Physicist's Report and my review of the installation details from Kenworth it is reasonable to state that exterior lights would be more probable than not on and operating until the collision by the 1995 Peterbuilt tractor trailer.

THUS SIGNED this 31 day of MARCH, 2005.

_____        _____
WITNESS                           Mr. Andre E. LeBleu
Address 1224 Woodlawn Drive       BOARD CERTIFIED ELECTRICAL ENGINEER
Baton Rouge, LA 70814
Date of Birth 09/23/1969
Telephone Number 225/751-7535

_____
WITNESS
Address 4609 Orchid St.
Baton Rouge, LA 70108
Date of Birth 05/03/78
Telephone No. (225) 921-9558

SWORN TO AND SUBSCRIBED TO BEFORE ME NOTARY PUBLIC on this 31 day of March, 2005 in the Parish of EBR in the State of Louisiana.

_____
NOTARY PUBLIC
Travis R. LeBleu, 24153

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

## VERIFICATION

BE IT KNOWN, that on this _31_ day of _MARCH_ 2005, before me, the undersigned Notary Public, duly commissioned and qualified in and for the Parish of _EBR_ and the State of Louisiana, therein residing, and in the presence of the undersigned competent witnesses came and appeared:

Mr. Andre E. LeBleu,

a resident of _Baton Rouge_, Louisiana, and of the full age and majority; who declared and acknowledge that he made the foregoing statement in its entirety and attests to the truth of the matter.

THUS DONE, READ AND PASSED in the Parish and State aforesaid, this _31_ day of _March_, 2005, in the presence of the two undersigned competent witnesses, who have hereunto signed their names as such on the date, month and year first above written.

Witnesses:

_[signature]_
Address _1224 Woodlands Drive_
_Baton Rouge, LA 70816_
Date of Birth: _09/23/1969_
Telephone Number: _225/751-7575_

_[signature]_
Mr. Andre E. LeBleu
Board Certified Electrical Engineer

_[signature] C Beaubouef_
Address _04609 Orchid St._
_Baton Rouge, LA 70808_
Date of Birth: _05/03/78_
Telephone Number: _(225) 921-9558_

SWORN TO AND SUBSCRIBED TO BEFORE ME NOTARY PUBLIC on this _31_ day of _March_, 2005 in the Parish of _EBR_ in the State of _Louisiana_.

_[signature]_
Notary Public
Travis R. LeBleu, 24153

# EXHIBIT 6

# Service History

## 11TRUCK

### Summary

**Report Date:** 9/7/2004
**Total Pages:** 1

**Service Items From:** 10/21/2003
**To:** 7/25/2004

**Total Service Items:** 4
**Total Maintenance Cost:** $680.09



Sum of SERVICELOGS.Tax $44.49
Sum of SERVICELOGS.Labor $264.50
Sum of SERVICELOGS.Parts $371.10

### Details                                    11TRUCK

**Service Date/Usage:** 10/21/2003    879,426 Miles    **Total Cost:** $472.14
**Description:** PM

**InvoiceNumber:** 09730    **Performed By:** CHADS

**Notes:** Replace brake shoes drum kits on rear drive axle

---

**Service Date/Usage:** 12/29/2003    879,426 Miles
**Description:** Annual Inspection

**InvoiceNumber:**    **Performed By:**

**Notes:**

---

**Service Date/Usage:** 4/7/2004    879,426 Miles    **Total Cost:** $51.36
**Description:** Clean AC filter and add Freon

**InvoiceNumber:** 10217    **Performed By:** CHADS

**Notes:**

---

**Service Date/Usage:** 7/25/2004    879,426 Miles    **Total Cost:** $156.59
**Description:** Seal

**InvoiceNumber:** 10714    **Performed By:** CHADS

**Notes:** Replace Left Rear wheel seal / repair lights / check AC / Ajust Clutch.

104
FTI

# EXHIBIT 7

# FLORIDA TRANSFORMER, INC.

### INDUCTION PROCEDURE
### NEW ASSOCIATE

Name **Neal Thompson** Date _____

Dept. **Transportation** Date Employed **08/30/2004**

## SUPERVISOR CHECK LIST:

### II. First Day

- ☐ Introduce yourself – Give your name, position and get his/her name (actual) and name he/she wishes to be called by:

  **NEAL Thompson**
  Name

- ☒ Extend a cordial welcome to Company & Department
- ☒ Show where to hang extra clothing – discuss clothes to wear for safety and comfort.
- ☒ Show location of vending machines. Explain news center / bulletin board usage.
- ☒ Show restrooms – (Use properly, keep clean, no smoking or eating).
- ☒ Explain smoking restrictions.
- ☒ Explain hours and days of work – Stress importance of working regularly.
- ☐ Review how to report necessary and unexpected absences.
- ☐ Review how to make changes in status, address, phone, beneficiary, dependents, name.
- ☒ Review importance of regular attendance and how it impacts fellow associates
- ☒ Re-emphasize what he/she as an individual can do to avoid excessive waste.

I have received and understand the above information and instructions.

I have fully covered the above items with this associate.

_____   _____
Supervisor's Signature                Date

_____   _____
Associates Signature                  Date

**Distribution:**
When these instructions have been fully complied with, this checklist is to be signed as indicated, dated and routed to Human Resources for inclusion in new associate's permanent file.

Phone 334-613-995 - Mr/Mrs. _Colyette Thompson_

(Page One)

(Page Four)

Form 1.06/1