IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LORI ANN MORRIS, | } |
| | } |
| Plaintiff, | } |
| | } |
| vs. | } CIVIL ACTION NO.3:05cv962-T |
| | } |
| FLORIDA TRANSFORMER, EDWARD | } |
| NEAL THOMPSON, et al., | } |
| | } |
| Defendants. | } |

### DEFENDANTS' MOTION TO STRIKE
### PLAINTIFF'S INADMISSABLE EVIDENCE

COME NOW the Defendants Edward Neal Thompson ("Thompson") and Florida Transformer, Inc. ("FTI") (collectively referred to as "Defendants"), and move the Court to strike certain inadmissible evidence described below, offered by the Plaintiff in Plaintiff's Response to Defendants' Motion for Summary Judgment ("Plaintiff's Response") for those reasons more particularly stated as follows:

### INADMISSIBLE EVIDENCE

In opposition to Defendants' Motion for Summary Judgment, the Plaintiff has offered the following:

I. Inadmissible opinions of expert Ed Robinson ("Robinson") (Plaintiff's Response, Exhs. 2 and 4); and expert Andre LeBleu ("LeBleu") (Plaintiff's Response, Exh. 5).

II. 11/22/05 Driver History Abstract ("Abstract") of Thompson (Plaintiff's Response, Exh. 12).

III. Unauthenticated portion of 9/2/04 Alabama Uniform Traffic Accident Report (Plaintiff's Response, Exh. 1, p. 3, "not to scale" drawing by Trooper Huntley).

  IV. Expert Ed Robinson's 3/17/05 letter to Attorney Robinson (Plaintiff's Response, Exh. 3).

For all the reasons stated below, this inadmissible evidence should be stricken from the record before the Court and not considered as evidence in opposition to Defendants' Motion for Summary Judgment.

## I. INADMISSIBLE OPINIONS OF EXPERTS ROBINSON AND LEBLEU SHOULD BE EXCLUDED AND DISREGARDED

  Plaintiff's experts, Robinson and LeBleu, have offered several different expert opinions that are inadmissible in opposition to summary judgment either because the opinions are outside their areas of expertise, or because they do not have a sufficient factual basis to support anything other than opinions based on speculation and conjecture, or both. Testimony outside an expert's area of expertise, or which is based on nothing more than speculation and conjecture is improper, unreliable, and irrelevant under Federal Rules of Evidence, 702 and the guidelines established by <u>Daubert v. Merrill-Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), <u>Kumho Tire Company, LTD. v. Carmichael</u>, 119 S. Ct. 1167 (1999), and <u>Browder v. General Motors Corp.</u>, 5 F. Supp. 2d 1267, 1282 (M.D. Ala. 1998). Rule 702 grants expert witnesses testimonial latitude unavailable to other witnesses on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. See Kumho Tire, *id.* Rule 702 imposes a special obligation on the trial judge to "insure that any and all scientific testimony … is not only relevant, but reliable." Kumho Tire, *id.* (citing Daubert).

For a witness' opinion and testimony to be admissible under Rule 702:

> "… A witness must have such knowledge, skill, experience, or education that his or her opinion will aid the tryer of fact in understanding the evidence." Browder, 5 F. Supp. 2 at 1281.

The burden of laying a proper foundation for the admission of expert testimony is on the party offering such testimony, and the admissibility of the expert's testimony must be established by a preponderance of the evidence. Daubert, 509 U.S. 579, 592 Note 10 (1993). Once an expert is qualified, the Court is to consider whether the opinion proferred by the expert is within the witness' field of expertise. If not, the opinion is to be excluded. See, for example, Montgomery v. Noga, 168 F. 3d 1282 (11th Cir. 1999) (excluding an expert's opinion because the issues to which the expert testified were distinct from his area of expertise).

In order for an expert's testimony to be admissible, the expert's opinion must also have been shown to be both reliable and relevant. See Daubert, 509 U.S. at 593-94. To be considered reliable, it must be established that an expert's opinion is based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation. Without such an underlying basis of support, an opinion is merely one of many possible theories and interpretations of the facts at issue and is no more or less helpful than the tryer of fact's own reading of the evidence. As was discussed in detail in Browder, 5 F. Supp. 2d at 1283:

> "An expert's testimony must be based on "facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation." (citations omitted). Without an underlying basis of support, the "expert's" opinion is only one of many possible theories and

3

interpretations of the facts at issue, and is no more or less helpful than the tryer of fact's own reading of the evidence." …

"While an expert may base an opinion on facts or data reasonably relied upon by experts in the field, and this data need not be admissible into evidence, Fed. R. Evid. 703, "[t]heoretical speculations, unsupported assumptions, and conclusory allegations advanced by an expert … are [not] entitled to any weight when raised in opposition to a motion for summary judgment." (citation omitted)  It is well established that "a party may not avoid summary judgment on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations."  (citation omitted) "Conclusory allegations without specific supporting facts have no probative value." (citations omitted) **Finally, when causation is the issue being addressed, 'courts are particularly wary of unfounded expert opinion.'** " (citations omitted) (emphasis added).

A.  <u>Which accident caused Morris' death?</u>

There were two accidents in this case, a very serious Rollover Accident, wherein Morris' vehicle not only rolled over on the driver's side onto the asphalt pavement of I-85, but also slid on its side for some distance before coming to rest, prior to the collision by Thompson's vehicle.  For aught that appears, Morris' fatal injuries occurred during this Rollover Accident.  Thompson's Vehicle was not involved in the Rollover Accident.  Robinson has offered an opinion that Morris "was alive at the time that his 1998 Kenworth tractor trailer was struck by the 1995 Peterbilt tractor driven by "Thompson" (Plaintiff's Response, Exh. 2, ¶9).

However, in his deposition, Robinson admitted that he is not a medical doctor, that he has no formal medical training, that he is not a cause of death expert, that he has no training in and is not an expert in biomechanics, that he does not hold himself out as an expert on what specific injuries caused Morris' death in this case, that he has not

4

tried to determine what injuries to Morris' body were caused by what particular object during the accident sequence, that he does not know if Morris' fatal injuries occurred before or after his ejection from the cab, and that he has no opinion to a reasonable degree of medical/biomechanical engineering certainty as to what caused Morris' death. (Robinson, 17/1 – 17/14; 18/8 – 18/17; 19/4 – 19/10; 19/23 – 20/5; 85/6 – 88/11).[1] Robinson stated that all he was going to say was that "I **think** his serious injuries were due to the impact, not the overturn." (Robinson, 20/6 – 20/10) (emphasis added).

It is clear from the above testimony that Robinson is not qualified as an expert to give any opinions as to the cause of Morris' death in this case. Even if he was, his opinion is based on nothing more than speculation and conjecture, which is not a proper basis for admissible testimony.

Robinson's speculation and conjecture as to which accident caused Morris' death is clearly inadmissible because by his own admission he is not qualified to offer a cause of death opinion, and because he has no factual basis or admissible evidence to support his speculation and conjecture that the Collision caused Morris' death, as opposed to other possible theories as to the cause of Morris' death. This is especially true in light of Sgt. Patterson's testimony that single vehicle rollover accidents are the most common cause of fatalities in commercial vehicles. (Patterson, 54/6 – 56/21). Hayes v. Douglas

---

[1] Note that all deposition excerpts cited herein have been included in the exhibits filed in support of Defendants' Amended Motion for Summary Judgment on Behalf of All Defendants, and they are hereby incorporated herein by reference.

Dynamics, Inc., 8. F. 3d 88, 92 (1st Cir. 1993); Kyser v. Harrison, 908 So. 2d 914, 919 (Ala. 2005); Jordan v. Continental Airlines, Inc., 893 So. 2d 446, 451 (Ala. Civ. App. 2004).

    B. **Thompson's vehicle was traveling 70 mph at the moment it collided with the Kenworth tractor and Thompson should have avoided the accident by driving out into the emergency lane.**

Robinson offered the opinion that Thompson's vehicle was traveling 70 mph at the moment it collided with the Kenworth tractor because it did not appear that Thompson applied brakes or left skid marks. (Plaintiff's Response, Exh. 2, ¶12). Although Robinson might have qualifications to testify as an accident reconstructionist as to impact speeds, in fact in this case, he did not reconstruct this accident, or make any calculations to determine impact speeds and his premise that Thompson did not apply his brakes and leave skidmarks is plain wrong.

He never personally inspected the accident site or either one of the vehicles involved in this accident, and no one on his behalf inspected either of the vehicles, other than the cab portion of Morris' Vehicle that had separated from the frame or chassis of that tractor. (Robinson, 30/2 - 31/3; 32/1 - 33/4; 34/13 - 35/19; 72/6 - 72/19; 137/3 - 137/11; 144/3 - 144/5; 170/6 - 171/2; 172/16 - 173/17; 175/15 - 176/2; 202/3 - 203/19.)

Robinson for the first time during his deposition gave the opinion that, if he did not have time to stop his vehicle and avoid this accident, Thompson should have steered his tractor/trailer rig at 70 mph off onto the right shoulder in the right emergency lane. (Robinson, 154/2-156/10). But he agreed that if Morris' Vehicle was blocking the emergency lane, then it would not have been reasonable to require

Thompson to try to avoid that vehicle by steering into the emergency lane. (Robinson, 217/17-218/15). Robinson offered the opinion that Thompson was outrunning his headlights, if he was unable to avoid the accident after first seeing Morris' overturned vehicle in his headlights, but Robinson agreed that at the time of the accident 70 mph was a legal speed, and there was no evidence that Thompson was traveling greater than 70 mph. (Robinson, 62/13-63/11). He also stated that he had reviewed the Thompson and Tidwell Affidavits and none of their testimony was inconsistent with his opinions or any of the physical evidence in this case. (Robinson, 63/22-64/6). Thompson and Tidwell confirmed that Thompson hit the brakes as soon as he realized Morris' Vehicle was blocking the travel lanes. (Affidavits of Thompson and Tidwell) (Thompson, 90/8 – 92/6) (Tidwell, 45/11 – 47/9; 51/6 – 51/11). They also confirmed in their depositions that Morris' tractor extended out into the emergency lane. (Thompson, 99/9 – 100/5) (Tidwell, 39/11 – 40/9).

     Robinson admitted that he had never investigated this type of accident before, where there was one impact due to a rollover, and then a subsequent impact from another vehicle. (Robinson, 114/18-115/1).

     Robinson did have his associates examine the site and prepare site drawings (DX 10 to Robinson's deposition) (Robinson 204/13-205/4; 206/12-207/5; 208/1-208/9.) Robinson testified that there was nothing on DX 10 that is depicted inaccurately. (Robinson, 212/15-212/19). The site drawing prepared for Robinson by his associates confirms Thompson's and Tidwell's testimony that the front portion of Morris' tractor extended over the right fog line some five or six feet into that right side emergency lane.

7

(Robinson, 215/18-216/8). Robinson admitted that neither he nor any of his associates were able to determine the point of impact or an area of impact for the Collision Accident (Robinson, 252/3- 252/12), and he would therefore have to rely on the testimony of the investigating troopers to explain their drawing and its accuracy. (Robinson, 247/22-248/5). Trooper Patterson confirmed Thompson's and Tidwell's testimony that the area of impact was indeed in the right hand lane, and that Thompson's Vehicle left skid marks. (Patterson, 27/2 – 27/23; 31/1 – 31/12; 32/18 – 34/4; 38/2 – 38/6; 118/15 – 120/6).

Neither Robinson nor any of his associates were able to determine the speed of Morris' Vehicle, the distance Morris' Vehicle slid on I-85 after the Rollover before any impact by the Peterbilt, or the exact location of Morris' Vehicle in the roadway after the Rollover and before the Collision Accident. (Robinson, 60/13- 62/12). Robinson has done no research or any reconstruction to determine at what distance away from Morris' Vehicle that Thompson could have seen it. (Robinson 66/11-66/20). Nor is he aware of any studies or tests done to determine the perception-reaction and avoidability of an accident of this type. (Robinson, 67/20- 68/11). Robinson did not perform any speed calculations for this case and is not aware of any such calculations performed by his associates. (Robinson, 117/12-117/17). Robinson is simply stating that because Thompson was traveling at 70 mph, that the maximum speed at impact could have been 70 mph if there was no braking or other deceleration prior to impact. (Robinson 134/14-134/23). But Thompson and Tidwell confirmed that Thompson did hit his brakes immediately after seeing Morris' Vehicle stretched out across I-85, and Patterson

confirmed with his photographs that Thompson's Vehicle left skidmarks. Robinson's primary factual basis for his opinions that there were no skidmarks, is dead wrong.

Robinson also admitted that he is not an expert on visual perception, that he is not offering any opinions as a human factors expert, that he is aware of no studies of perception/reaction times of drivers at night faced with an overturned truck with only the underside facing the driver, that he is not an expert on the range of Peterbilt headlights and has conducted no effective research to determine the range of Thompson's Vehicle's headlights, and that he is aware of no studies on perception/reaction times and avoidability of accidents similar to our accident. (Robinson, 14/11 – 14/16, 49/5 - 49/18, 51/2 – 51/11, 67/20 – 68/11, 228/3 – 228/14, 231/4 – 231/23).

Therefore, any purported opinions on the part of Robinson with respect to any perception/reaction times of Thompson, and/or his ability to have perceived and reacted to Morris' overturned vehicle in time to have avoided this accident, are not within his area of expertise, and are not supported by any admissible evidence in this case. They are not reliable, and are mere speculation and conjecture. See, Browder, supra.

Although Robinson prior to his deposition had not performed any calculations to show the avoidability of this accident on the part of Thompson, during his deposition he performed calculations showing that at 70 mph with normal and reasonable perception and reaction times and braking efficiencies, the speed at impact for

9

Thompson's Vehicle would still have been between 48 and 56 mph even if Thompson had reacted reasonably to avoid the accident. (Robinson, 153/6-153/3).

It is clear from the above that even if Robinson is a qualified accident reconstructionist, he did not perform the necessary inspections of the vehicles or the site to perform a reliable accident reconstruction in this case. He in fact did not perform a reliable reconstruction of this accident, and none of his opinions offered in support of any of the Plaintiff's claims and allegations in this case meet the reliability standards of Fed. R. Evid. 702, Browder, supra, or Daubert, supra. Robinson's purported opinions that Thompson's Vehicle was traveling 70 mph at impact, that Thompson was outrunning his headlights, or that Thompson could have avoided the accident by steering his rig out into the right side emergency lane are pure speculation and conjecture and are, therefore, inadmissible. See Browder, supra.

C.  The lights on the Morris tractor trailer rig were still illuminated after the rollover.

Robinson and LeBleu have both offered opinions that after the rollover, Morris' vehicle's lights were still on. (Plaintiff's Response, Exh. 2, ¶11; Exh. 5, ¶6).

This is a moot factual point in this case, because the evidence is undisputed that Thompson and Tidwell saw no lights visible on Morris' Vehicle after the accident. (Thompson, 88/7 – 92/6; 93/18 – 94/11; 95/18 – 97/5; 98/7 – 100/5; 102/17 – 104/11) (Tidwell, 37/4 – 40/9; 45/6 – 47/15; 88/4 – 91/16; 92/13 – 93/7). Patterson testified that it was not likely that any lights remained on after the Rollover, but if they did, they

would not have been pointed in a direction such that they could have been seen by Thompson as he approached. (Patterson, 128/8 – 128/21).

Plaintiff has offered the affidavits and testimony of experts Robinson and LeBleu, but neither of these experts can state with any degree of engineering/accident reconstruction certainty whether or not any lights could have been seen by Thompson as he approached, and neither have inspected Morris' Vehicle and, consequently, do not have any reliable evidence to support an opinion that any of the lights on Morris' vehicle would still have been illuminated after the Rollover. (Robinson, 170/17–171/2; 172/16–173/17; 178/20–179/1) (LeBleu, 39/18-41/10; 81/17-81/24; 105/5-107/1; 111/13-112/3; 115/2-115/11; 122/19-122/24; 124/1-131/4; 160/1-160/11). In fact, LeBleu testified that, although he is an electrical engineer by training, this is the first truck accident case that he has ever investigated, that he has never investigated a rollover accident before and that he does not "know specifically anything about vehicle lighting, and then it's been such a long time since I've done anything with lighting … ." (LeBleu, 22/20-23/1; 24/23-25/3; 26/11-26/17; 49/2-50/2; 63/9-64/7; 116/12-117/11).

Consequently, neither Robinson, nor LeBleu, are qualified to offer opinions as to whether or not the lights on Morris' vehicle survived the Rollover Accident, and even if they were, neither of them have any physical evidence to support an opinion/theory that the lights did survive or could have been seen by Thompson in any event. The opinions offered by Robinson and LeBleu in their affidavits and in their testimony concerning this issue are nothing more than pure speculation and conjecture, and as such, are inadmissible in this case. See Browder, supra.

## II. 11/22/05 DRIVER HISTORY ABSTRACT SHOULD BE EXCLUDED BECAUSE IT CONTAINS EVIDENCE OF PRIOR MISCONDUCT THAT IS IRRELEVANT, IMPROPER CHARACTER EVIDENCE, IMMATERIAL/INADMISSIBLE TO ANY ISSUES, REMOTE AND NOT SUBSTANTIALLY SIMILAR TO ALLEGED MISCONDUCT IN THIS CASE.

The 11/22/05 Driver History Abstract ("Abstract") includes eight driving offenses from 3/19/83 through 5/5/99, only one of which was in a commercial vehicle, and 6/17/97 and 7/1/87 accidents, neither of which were in any way similar to the accident involved in this case. FTI was unaware of any of this driving history. FTI did obtain through a brokerage service the three-year driving history required by the Federal Motor Carrier Safety Regulations ("FMCSR") which showed only the 8/29/02 accident in which Thompson's vehicle was rear-ended by another automobile, and a 2/21/03 speeding ticket Thompson received in his personal vehicle, which are also shown on the Abstract. (Thompson, 25/16 – 27/3; 30/5 – 31/16; 39/22 – 42/10; 68/14 – 71/2; 74/8 – 77/12) (Seay, 14/1 – 15/10; 18/1 – 21/4; 22/17 – 43/4).

Pursuant to Federal Rules of Evidence 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action and conformity therewith." Additionally under Alabama law, evidence of unrelated traffic offenses and conditions is not admissible to prove negligence or other wrongful conduct of a defendant driver on the occasion at issue in the current proceedings. Dean v. Johnston, 281 Ala. 602, 206 So. 2d 610 (1968); Pryor v. Brown & Root USA, Inc., 674 So. 2d 45 (Ala. 1996). Fed. R. Evid. 401, 402, and 403. Because none of these prior offenses/accidents are admissible as against Thompson, any probative value, if any, "is

substantially outweighed by the danger of unfair prejudice, confusion of the issues," and the potential for misleading the jury.  Fed. R. Evid. 403.

For any of these offenses/accidents to be admissible against FTI on claims of negligent entrustment/hiring/training/supervision/retention, Plaintiff must first show substantial evidence of: (1) entrustment; (2) incompetence; (3) with knowledge that he [or she] is incompetent; (4) proximate cause; and (5) damages.  Pryor v. Brown & Root USA, Inc., 674 So. 2d 45, 51, supra.  In addition, the alleged "incompetence" must have manifested itself to FTI, and must have been a contributing proximate cause to the accident in question."  Mason v. New, 475 So. 2d 854, 856 (Ala. 1985); Keller v. Kiedinger, 389 So. 2d 129, 131 (Ala. 1980); and Rush v. McDonnell, 241 Ala. 51, 106 So. 178 (Ala. 1925); Armstrong Business Services, Inc. v. AmSouth Bank, 817 So. 2d 665 (Ala. 2001).

Here, it is undisputed that FTI prior to the 9/2/04 accident, had knowledge of only the 2/21/03 speeding ticket in Thompson's personal vehicle, and the 8/29/02 non-fault, low speed accident wherein Thompson's vehicle was rear-ended by another automobile.  The other offenses/accidents on the Abstract are not admissible to show any alleged incompetency that could have either manifested itself to FTI or constituted a contributing proximate cause of this accident.  Therefore, these other offenses/accidents are due to be stricken from the record and disregarded in opposition to Defendants' Motion for Summary Judgment.

### III.  UNAUTHENTICATED PORTION OF 9/2/04 ALABAMA UNIFORM TRAFFIC ACCIDENT REPORT INADMISSIBLE.

Unauthenticated evidence, such as the "not to scale" drawing at issue here, in an accident report prepared by police officers is inadmissible hearsay, and is not to be admitted as evidence in any civil trial arising out of the accident.  Fed. R. Evid. 802, § 32-10-11 Code of Alabama 1975; Stevens v. Stanford, 766 So. 2d 849, 851 (Ala. Civ. App. 1999).  Although certain portions of an accident report may be admitted if they fall within an exception to the hearsay rule, Plaintiff has offered no basis for the admission of the "not to scale" drawing by Trooper Huntley and has made no effort to authenticate this drawing to make it admissible for any purpose in opposition to Defendants' Motion for Summary Judgment.  Fed. R. Evid. 802 and 803.  Furthermore, Trooper Patterson clearly explained the obvious errors contained therein, which make this evidence untrustworthy.  (Patterson, 34/22 – 37/11).  Therefore, this purported evidence is inadmissible and should be excluded as evidence in opposition to Defendants' Motion for Summary Judgment.

### IV.  EXPERT ROBINSON'S 3/17/05 LETTER TO ATTORNEY ROBINSON IS INADMISSIBLE.

An unsworn letter, including an expert's report to his attorney, is self-serving and constitutes inadmissible hearsay as evidence in opposition to a Motion for Summary Judgment.  Fed. R. Evid. 802; Wadsworth v. Jewell, 902 So. 2d 664 (Ala. 2004).  Such a report does not fall within the categories of admissible evidence in support of or in opposition to a Motion for Summary Judgment.  Rule 56(e) Fed. R. Civil Proc.

Therefore, this 3/17/05 letter/report from expert Robinson offered in opposition to Defendants' Motion for Summary Judgment is due to be excluded as evidence.

## CONCLUSION

For all of the above reasons, the purported evidence offered by the Plaintiff, as listed above, in Opposition to Defendants' Motion for Summary Judgment, is due to be stricken from the record and disregarded as evidence in opposition to the Motion for Summary Judgment.

Respectfully submitted,

/s/ Richard E. Broughton
Richard E. Broughton

/s/ W. Evans Brittain
W. Evans Brittain

Attorneys for Edward Neal Thompson
and Florida Transformer

OF COUNSEL:
Ball, Ball, Matthews & Novak, P.A.
2000 Interstate Park Drive
Suite #204 [36109-5413]
P.O. Box 2148
Montgomery, Alabama  36102-2148
Telephone (334) 387-7680
Telefax (334) 387-3222
rbroughton@ball-ball.com
ebrittain@ball-ball.com

CERTIFICATE OF SERVICE

      I hereby certify that on this August 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Henry Lee Penickhlpenick@bham.rr.com
hlpenick@penickandassoc.com

                              Manual Notice List

Edward A. Robinson, III
600 North Foster Street
P O Box 3131
Baton Rouge, LA 70821

                                        /s/ Richard E. Broughton
                                        OF COUNSEL