IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LORI ANN MORRIS, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO.: 3:05-CV-962-T |
| ) | |
| EDWARD NEAL THOMPSON, et al., ) | |
| ) | |
| DEFENDANTS. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO STRIKE PLAINTIFF'S EVIDENCE**

Comes now the Plaintiff and Responds to Defendants' Motion to Strike Plaintiff's Evidence as follows:

**I.  Plaintiff Experts' Testimony meet *Daubert* Test**

a.  Defendants seek to strike exhibits two, four and five of Plaintiff's response to Defendants' Motion for Summary Judgment.  Exhibit two is the Curriculum Vita of Dr. Edward L. Robinson ("Robinson").  Exhibit four was excerpts from the deposition of Dr. Edward L. Robinson.  Exhibit five is the sworn affidavit of Board Certified Electrical Engineer, Andre E. LeBleu ("LeBleu").

Defendants seek to exclude these exhibits on the grounds that "Plaintiff's experts, Robinson and LeBleu, have offered several different expert opinions that are inadmissable "either because the opinions are outside their area of expertise, or because

1

they do not have a sufficient factually basis to support anything other than opinions based on speculation and conjecture, or both." (Defendants Motion, p. 2). In support thereof, Defendants cite the case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1973). The standard set by *Daubert,* however, is a "flexible" one. *Daubert* at 594. Under *Daubert,* expert testimony is admissible if it is "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact an issue." *Id.* at 589. Consistent with Rule 702, Federal Rules of Evidence, "the trial judge must insure that any and all scientific evidence or evidence admitted is not only relevant but reliable." "*Id.*"

The Supreme Court has parsed Rule 702 to identify three requirements for the admission of supported scientific testimony: (1) The witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) The subject matter of the witnesses' testimony must relevant to one or more issues and the underlined case at barr; (3) The testimony must have evidentiary reliability. *Id* at 591.

In the case at bar, the autopsy of Morris concluded he died from blunt force trauma (Exhibit 1), from the subject vehicle accident. Dr. Robinson is a Board Certified Vehicle Accident Reconstructionist. (Exhibit 1). He has a Ph.D. in Physics from Purdue University and is a fully accredited member of eight Accident Reconstructionist Associations and three Physical Science Associations. (Exhibit 2). He has received full accreditation as a Traffic Accident Reconstructionist from the Governing Board of

Directors of the Accreditation Commission for Traffic Accident Reconstruction.

Defendants take issue with Dr. Robinson's testimony that "I think his serious injuries (i.e., death) were due to the impact, not the overturn." ( Exhibit 9, Robinson, 20/6 - 20/10). (Defendants Motion, p. 5). The context of Robinson's statement was to explain that as between the initial rollover that Morris had and the subsequent collision with Thompson's, tractor-trailer, Dr. Robinson expressed an opinion that "

> A. My general experience and overturned trucks is that the injuries that Mr. Morris received- - the very serious injuries I've never seen before in an overturned truck accident, so I think it highly unlikely that these injuries would have been associated with the overturn. On the other hand, impact by another vehicle at comparable mass at 70 mph or 60 mph would be expected to cause some very serious injuries.

(Exhibit 9, Robinson, 19/12 - 19/22). Robinson, who had reviewed the autopsy on Morris, (Exhibit 9, p. 86), that determined that the cause of death was blunt force. (Exhibit 1). Robinson also reviewed photographs of the damage to the seat beat Morris wore during the collision. (Exhibit 9, p.105-106) he testified:

> Q. Well, you're not ruling out the fact that Mr. Morris could have been fatally injured during the rollover in this case?
>
> A. In my mind, yes. Because the nature of the injuries is not such that would be on the left side of his body. I mean, he would have bilateral injuries. And that's not going to happen when he- - from that rollover.

(Exhibit 9, Robinson, 85/21 - 86/6). Dr. Robinson's testimony is relevant to whether or not the serious injuries (i.e. e., death) were caused by the rollover or the collision with

Defendant, Thompson. His testimony is reliable since it is based on his skill, knowledge and experience. Dr. Robinson testified that this "60 or 70 mph impact with the other truck would result in forces significantly higher than" the 5 or 6 thousand pounds. Morris seat belt was designed to hold. (Exhibit 9, Robinson 94/10 - 95/20).

> . . . So the man sitting here in the seat with the bottom facing the truck and the truck hits it, it may momentarily be 100 Gs. This 100 pound man may for a few milliseconds weigh 10,000 pounds . . . . we're talking about tremendous force.

(Robinson, 94/10 - 94/22). Morris was ejected from the cab of his tractor trailer. Robinson concluded "you can't hold it during that impact." (Robinson, 95/6 - 95/7). Robinson gave these opinions after doing feet per second "kinematic equation[s]" (45-58).

Since Defendants make an issue of whether or not Morris was killed during the rollover or the collision, the testimony of Robinson would aide the jury in deciding whether or not the death occurred during the rollover or during the collision. Robinson's testimony is both relevant, reliable and will aid the jury.

Unlike the expert in *Khumo Tire Company, Ltd. v. Carmichael,* 526 U.S. 137, 146 (1999), Robinson's methodology is not attacked by Defendants. Defendants have offered no scientific evidence rebutting Robinson's methodology for reaching his opinion. Whether classified as scientific or technical knowledge, "Federal Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption

that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" *Khumo* at 148 citing *Daubert*, 509 U.S. at 592. *Daubert* makes clear that the factors it mentions do not constitute a "definitive check list or test." *Khumo* at 150, citing *Daubert* at 593. "The trial judge must have a considerable leed-way in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Khumo* at 152. The particular issue in this case is whether death was caused by the initial rollover or the impact of the later collision. Robinson's scientific knowledge of accident reconstruction, physics as well as his methodology of determining impact forces make his testimony on seat belt ejectment and resulting injury reliable.

Defendants' only attempt to counteract the conclusions reached by Morris was the testimony of Sergeant James Patterson, with Alabama State Highway Patrol, who testified "that single vehicle rollover accidents are the most common cause of fatalities in commercial vehicles." Patterson is not a cause of death expert, nor is he a certified accident reconstructionist. Assuming, arguendo, that single vehicle rollover accidents are the most common cause of fatalities, Defendants presented no contradictory evidence that the death in this case was due to the rollover, rather than the collision.

Defendants argue that Robinson admitted that he had never investigated this type of accident before, "where there was one impact due to a rollover, than a subsequent impact from another vehicle." (Defendant's Motion., p. 7). The fact that this sequence of events had not presented itself to Robinson before does not invalidate his opinion

5

affecting the impact of the collision.  As an expert he can extrapolate.

Robinson testified that Thompson could have avoided the accident by steering into the emergency lane.  (Exhibit 9, Robinson, 154/2 - 156/10).  Defendants argues that Thompson and Tidwell "confirmed in their depositions that Morris' tractor extended out into the emergency lane."  (Defendants Motion, p. 7).  This contention by Thompson and Tidwell was inconsistent with their earlier affidavits.  Thompson stated in his affidavit "the first thing I saw that told me there was an object blocking both lanes of traffic ahead of me was some tires, and then the underside of the overturned tractor trailer."  (Exhibit 3, p. 2).  Tidwell stated in his affidavit "all of a sudden, I saw what appeared to be the bottom of an overturned truck lying out across both lanes of traffic."  (Exhibit 4, p. 2).  The latter inconsistent deposition testimony that the truck block the emergency lane is due to be struck.

## II.  **LeBleu's Testimony Meets *Daubert's* Test.**

Defendants seek to strike the affidavit of Andre LeBleu.  (Defendants Motion., p. 1).  LeBleu is a Licensed and Certified Electrical Engineer.  He is licensed by the Professional Engineering Boards in Arkansas, Florida, Louisiana and Texas.  (Exhibit 5).  He is registered with and certified by the National Council of Examiner's for Engineering and Surveying (NCEES).  He is also registered and certified by the Institute of Electrical Engineers (EEE) (Exhibit 5).  He had been engaged in electrical engineering since he became an electrical engineer in 1987.  (Exhibit 22/7-22/9).  He had nineteen years

experience in electrical engineering.

Morris was driving a 1998 Kenworth T600 tractor trailer. (Exhibit 6, LeBleu 52/21, -84/6). Before rendering an opinion, LeBleu examined a Kenworth T600 (Exhibit 6, 33/24). He later went to a Kenworth dealership and looked at the battery securing system, the wiring and got some data regarding Kenworth trucks. *id.*, 33/11-33/14(12). His standard methodology was to examine the system in light of the National Electrical Code and his own experience and knowledge of electrical principals and troubleshooting. (Exhibit 6, 53/13-54/4). He reviewed the affidavits of Thompson and Tidwell. (Exhibit 6, 55/4). He reviewed photographs of Morris' dashboard control panel for lighting control (Exhibit 6, 60/20-61-21). He examined photographs of the condition of the lights on Morris' tractor trailer (Exhibit 6, 65/12-65/20). He obtained brochures and schematic wiring diagrams for the T600 from the Internet. (Exhibit 6, 79/25-80/24; 86/13-86/18). LeBleu examined the location of the battery and the wiring harness and determined that the electrical system would have withstood the initial roll-over the lights would be operable after the roll-over. (Exhibit 6, LeBleu, 87/6-91/20; 94/7-94/11). LeBleu concluded that it was more probable than not that lights remained on after the roll-over but not after the collision. (Exhibit 6, 96/11-98/10; 99/25-100/21).

Defendants, in their motion to strike, have not contested Robinson's contention that Thompson outran his headlights. (Plaintiff's submission, Exhibit 4). Defendants do not contest neither LeBleu's nor Robinson's methodologies. The merely claim that their

7

expressed opinions where "nothing more than pure speculation and conjecture." The foregoing references have shown that both Robinson and LeBleu to reasoned approaches, relying on proven methodologies to reach their opinions.

II. **Thompson's Driver History Abstract Should Not Be Excluded**.

In opposition to defendant's motion for summary judgement, plaintiff has submitted the driver's history of Thompson. (Exhibit 12 to plaintiff's response, now Exhibit 7). Since May 3, 1983, Thompson's driving history shows that he has had nine driving infractions, including one DUI and seven speeding tickets. It also shows that Thompson, since 1987, had been involved in three accidents prior to the subject accident. (Exhibit 7). In addition, Thompson was also involved in a forth accident on June 14, 2004, in which he rear ended another driver while driving his commercial vehicle. (Exhibit 8, Thompson 35/11/-38).

In the case at bar, plaintiff contends that Thompson caused the accident by out running his headlights and by driving at excessive, given the conditions of the highway. Although Thompson was allegedly driving at the posted speed limit (70 mph), a driver may be negligent and/or wanton while driving at the speed limit, when the conditions of the roadway requires a lessor speed. *Hornady v. Meadows,* 847 So. 2d 908, 911 (Ala. 2002).

Thompson's driving record is relevant. Although Rule 404(b), Federal Rules of

Evidence, would normally exclude evidence of other wrongs, they are admissible to show a pattern of conduct or habit. Thompson's record shows a pattern of excessive speed and reckless driving. The driving history of Thompson is certified by the Custodian of Records for the Alabama Department of Public Safety. It is admissible and relevant.

### III. **Defendant is Estopped from Striking the Accident Report**

The Uniform Traffic Accident Report is admissible evidence <u>for purposes of summary judgement</u>, even though it might not be admissible evidence at trial. Defendants submitted the accident report as part of its submission and is estopped from moving to strike plaintiff's submission in support of Summary Judgement of the same document in opposition to the Motion for Summary Judgment.

### IV. **Robinson's Letter of March 17, 2005, is Admissible**.

Although the March 17, 2005 letter of Robinson was unsworn, Robinson mooted this objection by testifying to the contents of the March 17, 2005 letter during his sworn deposition testimony. (Exhibit 9, 257/10-259/20).

### **CONCLUSION**

Based on the foregoing argument and authorities, defendant's motion to strike is due to be denied.

                          Respectfully submitted,

                          /s/ Henry L. Penick
                            Attorney for Plaintiff

H. L. Penick & Associates, PC.

319 17th Street North, Suite 200
P.O. Box 967
Birmingham, AL 35201-0967
(205) 252-2538

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served this the 25th day of August, 2006, by placing same in the United States Mail, first-class postage prepaid and properly addressed as follows:

Richard E. Broughton
W. Evans Brittain
Ball, Ball, Matthews & Novak, PA
2000 Interstate Park Drive
Suite 204
P.O. Box 2148
Montgomery, AL 36102-2148

/s/ Henry L. Penick