# EXHIBIT 8

# FREEDOM COURT REPORTING

Page 1

```
 1      IN THE UNITED STATES DISTRICT COURT
 2      FOR THE MIDDLE DISTRICT OF ALABAMA
 3            EASTERN DIVISION
 4
 5   LORI ANN MORRIS,      )
 6        Plaintiff,   )
 7   vs.              ) CASE NUMBER:
 8   FLORIDA TRANSFORMER,   ) 3:05-CV-962-T
 9   EDWARD NEAL THOMPSON,   )
10   et al.,           )
11        Defendants.   )
12
13      DEPOSITION OF EDWARD NEAL THOMPSON
14         In accordance with Rule 5(d) of
15   The Alabama Rules of Civil Procedure, as
16   Amended, effective May 15, 1988, I, Cindy
17   Weldon, am hereby delivering to Henry L.
18   Penick, the original transcript of the oral
19   testimony taken on the 14th day of July,
20   2006, along with exhibits.
21         Please be advised that this is the
22   same and not retained by the Court Reporter,
23   nor filed with the Court.
```

Page 2

```
 1      IN THE UNITED STATES DISTRICT COURT
 2      FOR THE MIDDLE DISTRICT OF ALABAMA
 3            EASTERN DIVISION
 4
 5   LORI ANN MORRIS,      )
 6        Plaintiff,   )
 7   vs.              ) CASE NUMBER:
 8                    ) 3:05-CV-962-T
 9   FLORIDA TRANSFORMER,   )
10   EDWARD NEAL THOMPSON,   )
11   et al.,           )
12        Defendants.   )
13
14         S T I P U L A T I O N
15         IT IS STIPULATED AND AGREED, by
16   and between the parties through their
17   respective counsel, that the deposition of
18   EDWARD NEAL THOMPSON, may be taken before
19   Cindy Weldon, Certified Shorthand Reporter,
20   Commissioner and Notary Public, at 732 North
21   9th Street, DeFuniak Springs, Florida, on
22   July the 14th, 2006 at 1:15 p.m.
23         IT IS FURTHER STIPULATED AND
```

Page 3

```
 1   AGREED that the signature to and the reading
 2   of the deposition by the witness is waived,
 3   the deposition to have the same force and
 4   effect as if full compliance had been had
 5   with all laws and rules of Court relating to
 6   the taking of depositions.
 7         IT IS FURTHER STIPULATED AND
 8   AGREED that it shall not be necessary for
 9   any objections to be made by counsel to any
10   questions, except as to form or leading
11   questions, and that counsel for the parties
12   may make objections and assign grounds at
13   the time of trial, or at the time said
14   deposition is offered in evidence, or prior
15   thereto.
16         IT IS FURTHER STIPULATED AND
17   AGREED that notice of filing of the
18   deposition by the Commissioner is waived.
19
20
21
22
23
```

Page 4

```
 1         A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF:
 4      MR. HENRY L. PENICK
 5      THE PENICK BUILDING
 6      319 - 17TH STREET NORTH, SUITE 200
 7      BIRMINGHAM, ALABAMA  35203
 8
 9   FOR THE DEFENDANT:
10      MR. RICHARD BROUGHTON
11      2000 INTERSTATE PARK DRIVE
12      SUITE 204
13      MONTGOMERY, ALABAMA  36109
14
15   ALSO PRESENT:
16      MR. FRANKLIN SCOTT SEAY
17
```

1 (Pages 1 to 4)

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

FREEDOM COURT REPORTING

Page 33

1  anything about that one.
2      Q.  Okay.  Is there anything on your
3  report that's incomplete or incorrect?
4      MR. BROUGHTON:  You mean does he
5  dispute any of the information on that
6  report?
7      Q.  Or is there anything that's
8  omitted from this report that you know
9  about?
10     A.  To the best of my knowledge,
11 that's -- The wreck I had with Dart is not
12 on here.
13     Q.  Okay.  Let's talk about that.  Was
14 Dart the next place you went after McLane's?
15     A.  Yes, sir.
16     Q.  Just so we can make sure about
17 McLane's before moving on, you didn't have
18 any accidents or infractions?
19     A.  No, sir.
20     Q.  Nobody asked you to leave?
21     A.  No, sir.
22     Q.  Then tell me about your next
23 episode with Dart.

Page 34

1      A.  Went to work with Dart sometime in
2  -- I can't remember exactly.  I think it
3  was 2004, the first part of 2004.  I went to
4  work to -- right in August of 2004.
5      MR. BROUGHTON:  2003 or 2004?
6      THE WITNESS:  2004.
7      A.  When I left McLane's there, I
8  didn't do much of nothing there for a while
9  after I left them until I went to Dart.
10     Q.  Okay.  Well, let's talk about when
11 you left Dart.  And I think we can put it in
12 perspective.  Do you recall when you left
13 Dart?
14     A.  Yes, sir.
15     Q.  When was that?
16     A.  Right at August of 2004.
17     Q.  All right.  So when did you start
18 with Dart?
19     A.  The first -- January of --
20 sometime in 2004.
21     Q.  So you were with them that last
22 time for about eight months?
23     A.  Yes, sir.

Page 35

1      Q.  All right.  Where were you being
2  dispatched out of?
3      A.  Minneapolis, Minnesota.
4      Q.  Did they have a physical location
5  here that you operated under at all?
6      A.  No, sir.  Just satellite.  Tell
7  you where to go to get your next load at.
8      Q.  Okay.  And then you said that
9  sometime while driving for them, you got in
10 an accident?
11     A.  It was in -- let's see.  I believe
12 it was -- may have been June 2004.
13     Q.  What do you recall about that
14 accident?
15     A.  I was in Nashville, Tennessee
16 coming across Interstate 40 and they was --
17 you get on the ramp where cars get back on
18 the interstate, and there was two cars
19 coming back out to the interstate.
20     I slowed down to let them get
21 ahead of me.  The first car pulled over in
22 front of me.  The second car went around the
23 first car and speeded up.

Page 36

1      So we were building our speed back
2  up to forty-five mile an hour.  And then
3  that car in front that went around the first
4  car slammed on brakes and there wasn't
5  nothing I could do.
6      I went into the back of the other
7  car.  And it was road rage is what we found
8  it ended up to be.
9      Q.  It was road rage between the first
10 -- the two cars ahead of you?
11     A.  Yes.
12     Q.  And that's why the person ahead
13 slammed on the brakes?
14     A.  Yes, sir.
15     Q.  Caused --
16     A.  And after we slammed on brakes and
17 I hit the car, he took off.
18     Q.  Okay.
19     A.  I went to court in Nashville.  And
20 everything that happened -- you know, with
21 it being road rage, to have it kept off my
22 record.
23     Q.  And what did they decide in

9 (Pages 33 to 36)

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

Page 37

1  Nashville to do?
2     A.  It's not supposed to be on my
3  record.  It was something that I couldn't
4  help.  Completely unavoidable.  The judge
5  said it shouldn't have been wrote up like
6  that.
7     Q.  Let me show you what's mark as
8  Plaintiff's Exhibit 2 to your deposition.
9        (Whereupon, Plaintiff's Exhibit
10 No. 2 was marked for identification.)
11    A.  Yes, sir.
12    Q.  Is this the -- Did Dart write this
13 up?
14    A.  Yes, sir.
15    Q.  And what did they do, mail it to
16 you?
17    A.  No.  I think they faxed it to
18 Scott.
19    Q.  But you reported it to them;
20 right?
21    A.  Yes, sir.
22    Q.  Was anybody injured in that
23 accident?

Page 38

1     A.  No, sir.
2     Q.  Did anybody have to be taken to
3  the hospital?
4     A.  No.
5     Q.  Was any vehicle towed after the
6  accident?
7     A.  Yes, sir.
8     Q.  Whose vehicle was towed?
9     A.  The car that I ran into.
10    Q.  I noticed that on Plaintiff's
11 Exhibit 2, it asked whether or not you had
12 -- did you take any test after the
13 accident.  Did you take any?
14    A.  Supposed -- They didn't tell me I
15 had to.  I asked them that.  They told me
16 no, there wasn't any injuries; so I didn't
17 have to take -- because that's the first
18 question I asked them.
19    Q.  Okay.
20    A.  Where did I need to go to do it,
21 so, you know, I could follow the federal
22 guidelines.
23    Q.  And they told you you didn't have

Page 39

1  to; right?
2     A.  Yes, sir.
3     Q.  And that was somebody at Dart?
4     A.  Yes, sir.  In the safety
5  department.
6     Q.  Did you have any other accidents
7  or infraction or anything while you were at
8  Dart?
9     A.  No, sir.
10    Q.  Any other tickets or anything?
11    A.  No, sir.
12    Q.  Did you leave voluntarily?
13    A.  Yes, sir.
14    Q.  Did anyone ask you to leave?
15    A.  No, sir.
16    Q.  That was an independent
17 contracting situation, also, wasn't it?
18    A.  Yes, sir.
19    Q.  What did you do after that?
20    A.  I came to work at Florida
21 Transformer.
22    Q.  How did you hear about the job at
23 Florida Transformer?

Page 40

1     A.  A friend of the family.  And I
2  came down and --
3     Q.  Which one was the friend of the
4  family?
5     A.  His name is Mr. Collins.
6     Q.  Does he work for FTI?
7     A.  Yes, sir.
8     Q.  What's Mr. Collins' first name?
9     A.  I'm trying to think of what his --
10 Carl Collins.
11    Q.  What did he tell you?
12    A.  He just said that they were
13 looking for a driver.  I was tired of being
14 gone all the time and they was looking for a
15 driver and I came down and talked to Scott,
16 got application and filled it out.
17    Q.  What did he tell you would be
18 required of you to drive for Florida
19 Transformer?
20    A.  Deliver transformers and deliver
21 ones out they refurbishd and bring back some
22 to be redone.
23    Q.  What was the pay arrangement?

10 (Pages 37 to 40)

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**