**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **LORI ANN MORRIS,** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | |
| vs. ) | **CIVIL ACTION NO.: 3:05-CV-962-T** |
| ) | |
| **EDWARD NEAL THOMPSON, et al.,** ) | |
| ) | |
| **DEFENDANTS.** ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' REPLY
TO PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO AMENDED MOTION**

Comes now the Plaintiff and Responds to Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment and Responds to Defendants' Amended Motion for Summary Judgment as follows:

**A. Summary of Facts**

On September 2, 2004, on I-85 North near Shorter, Alabama, a collision occurred the tractor-trailer rig occupied by Plaintiff's decedent, Vernell B. Morris ("Morris"), and the tractor-trailer operated by Defendant, Edward Neal Thompson ("Thompson"), who was traveling also in a northly direction. Prior to the collision, Morris' vehicle had left the road, went into the median and rolled over while coming back onto the road. Morris' vehicle had come to a rest with the undercarriage facing on coming traffic, prior to the collision with Thompson.

**B. Defendants Have Not Met their Burden of Presenting Credible Evidence.**

Defendants postulate that "although Plaintiff argues that no one knows why Morris ran his vehicle off I-85 into the median, the most likely causes were that he was drowsy or fell asleep." Defendants present no credible evidence that Morris fell asleep, only speculation. Although Defendants claim that Morris was negligent for attempting to re-enter I-85 at the speed and angle he was traveling, (Defendants' Reply, p. 4), defendants present no credible evidence of the speed Morris was traveling or that Morris was, in fact, controlling the vehicle when it returned to the roadway. Defendants argue that Morris was contributorily negligent, but has produced no credible evidence of negligence. Defendant's evidence does not make it more likely that Morris fell asleep then he was run off the road or and a medical emergency.

Thompson and Tidwell, in their Affidavits, assert that "they saw no lights or reflectors on Morris' vehicle as they approached." (Defendants' Reply, p. 4). Andre LeBleu, a Certified Electrical Engineer, testified that Morris' headlights would have been on following the roll-over and that his lights and reflectors should have been visible to Thompson and Tidwell. (LeBleu, 148/4-148/17).

Thompson and Tidwell in their Affidavits stated that Morris' vehicle only "blocked both northbound lanes," but in their deposition contend that Morris' overturned truck blocked "both travel lanes, but also part of the emergency lane on the right side of the right northbound lane." (Defendants' Reply, p. 4).

Defendants claim that Sergeant Patterson, an Accident Reconstructionist, claims that the collision occurred in the right northbound lane. (Defendants' Reply, p. 5). The accident report submitted by Defendants shows that Trooper Alex Huntley, who investigated the accident and wrote the report indicated that the collision occurred in the left northbound lane. It also showed no skid marks (Ex. 1, p.5) Defendants claim that Patterson stated that Thompson's vehicle left a skid mark "created by the left side tires." (Defendants' Reply, p. 5). Although Sergeant Patterson was shown a photograph that appeared to have skid marks, Patterson testified "I don't recall seeing these tire marks at the time of the crash." (Ex.2, Patterson, 32/1 - 32/3).

Sergeant Patterson, over Plaintiff's objection, testified that "it was likely that the lights on Morris vehicle were knocked out during the roll-over accident." (Defendants' Reply, p. 5). Sergeant Patterson possessed no qualifications as an electrical engineer or any such training or experience to give such an expert opinion. Patterson's testimony regarding skid marks and lights are due to be stricken. No one has authenticated the photograph from which Sergeant Patterson saw what appeared to be skid marks. No witness has testified that the skid marks did, in fact, come from the braking of Thompson's peter built.

Dr. Edward L. Robinson, an Accredited Accident Reconstructionist, testified that based on his review of data compiled by his associate, the accident occurred in the left lane, there were no skid marks, and Morris' tractor did not block the right most

3

emergency lane. (Plaintiff's Forst Response, pp. 3, 5, 6 and 15). Robinson's sight drawing does not corroborate the fact that the emergency lane was partially blocked as argued by defendant. Patterson did not believe the emergency land was blocked, he "believe[d] that it (Morris' vehicle) was blocking all of the left most lane and partially blocking the right lane, if not completely." (Ex. 3, Robinson, 25/20 - 25/22).

Defendants claim that "Robinson and LeBleu admitted in their depositions that even if any lights were still illuminated after the roll-over accident, they can not say the lights could have been seen by Thompson as he approach. (Defendants' Reply, p. 6), to the contrary Robinson testified in his deposition that the trailer marker lights along the side of the trailer in its rolled-over position would be eight feet off the ground. The driver's eye height in a cab, such as Thompson's is about nine and a half feet, "those lights he probably could have seen." (Ex. 3, Robinson, 174/13 - 174/21).

All witnesses expressed an opinion that the lights of Morris' tractor-trailer were probably on. Patterson testified "it is possible that some lights remained on." (Ex. w, Patterson 128/18 - 128/19). Andre LeBleu, a Board Certified Electrical Engineer, who had examined the battery placement and wiring of a T600 Kenworth like the one driven by Morris, as well as the schematics of the electrical system testified that the lighting system for the tractor-trailer is routed within the structure of the cab or tractor and it is more probable than not that the tractor and the tractor lights were on and clearly visible to the attendant tractor-trailer and remained on and visible until the collision. (Ex. 4,

4

LeBleu, 53/8 - 53/12, 144/9 - 144/21; 148/4 - 148/17). LeBleu also testified that it is more probable than not that the lights, the end of the tractor, but underneath the trailer, would also have been on. (Ex. 3, LeBleu 154/17 - 155/11).

Dr. Robinson gains the same opinion that had Thompson been attentive, the head lights of Morris' vehicle would have been detectible. (Robinson, 234/17 - 235/4). According to Dr. Robinson, Thompson should also have seen the reflector lights on the side of Morris' trailer. (Robinson, 222/9 - 223/18).

### C. **Morris' Tractor did not Block the Emergency Lane**.

Dr. Robinson concluded from looking at the accident report and from his investigation that the Kenworth Model T600 was a total of 120 inches long (Ex. 3, Robinson, 213/19 - 214/8) and that the "front of the truck would have been seven or eight feet maximum beyond that point [impact] which would have not even completely blocked the right lane. (Robinson, 247/6 - 247/3 - 247/12). Sergeant Patterson also believed that Morris' vehicle "mostly block[ed] the right lane." (Ex. 2, Patterson, 114/23).

Originally, Thompson, in his affidavit claimed that "there was an object blocking both lanes of traffic ahead of me." (Ex. 5, Thompson Affidavit, p. 2). Later in his deposition, Thompson claimed that "Morris' tractor-trailer was Blocking all or both lanes, including into the emergency lane. (Ex. 6, Thompson, 99/9 - 100/5). Thompson admitted that in his affidavit he had not mentioned that Morris' truck was blocking the emergency lane. (Ex. 6, Thompson, 101/3 - 101/11).

5

Likewise, Tidwell in his Affidavit stated that Morris' truck was "lying out across both lanes of traffic." (Ex. 7, Tidwell Affidavit, p. 2). Tidwell, however, in his deposition stated that "it was blocking both northbound lanes, plus half the emergency lane." (Ex. 8, Tidwell 39/17 - 39/20). Tidwell also admitted in his deposition that in his prior affidavit he had not mentioned that Morris' truck was blocking part of the emergency lane. (Tidwell, 42/10 - 42/13).

In the case at bar, Dr. Edward L. Robinson, plaintiff's accident reconstructionist had testified on June 22, 2006, that Thompson could have avoided the accident by slowing his vehicle and steering off the main road into the emergency lane and shoulder. (Ex. 3, Robinson, 151/7 - 52/5). Thompson and Tidwell gave their depositions a month later on July 14, 2006, and for the first time added the blockage of the emergency lane. This court has consistently held that the court may strike the later inconsistent sworn testimony. *Treadwell v. Dowl - United Technologies,* 974 F. Supp. 962, 967 (M.D. Ala.1997); *Brasfield v. Jack McLendon Furniture, Inc.,* 953 F. Supp. 1424, 1430 (M.D. Ala 1996); *Bullock v. Widnall,* 953 F. Supp. 1461, 1474-1475n 22 (M.D. Ala. 1996), aff'd, 149 F 3d 1196 (11th Circuit 1998); *Knox v. Brundidge Shirt Corp.,* 942 F. Supp. 522, 533 (M.D. Ala. 1996), aff'd, 1116 F. 3d 1493 (11th Circuit 1997).

In this case Thompson and Tidwell had given clear, unambiguous testimony, but later, "inherently inconsistent" deposition testimony to close the gap in their "no way out" defense.

6

### D. Visibility of Morris' Vehicle is a Disputed Fact.

Patterson testified that the crash was not avoidable by Thompson (Defendant's brief, p. 15). Dr. Robinson testified that the collision was avoidable by slowing the vehicle and steering into the emergency lane (Ex. 3, Robinson, 151/7-151/16; 272/8-273/4). The two accident reconstructionist create a disputed issue for trial. In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 - 151, 120 S. Ct. 2097, 2110 (2000), the Supreme Court observed that this:

> "Court must review all of the evidence in the record, drawing reasonable inferences in favor of the non-moving party, but making no credibility determinations or weighing any evidence. The later function along with the drawing legitimate inferences from the facts are for the jury, not the court. Thus, although the court should review the record for the whole it must disregard all evidence favorable to the non-moving party that the jury is not required to believe."

### E. Skid Marks are a Jury Question.

In like manner, the issue of skid marks is also a disputed fact. Defendants submitted the Alabama Uniform Traffic Accident Report in its first submission, now seeks to exclude it as being inaccurate. The report was prepared by the investigating officers, Trooper Alex F. Huntley (Ex. 1 p. 4). Huntley did not note any skid marks. (Ex. 5, p.5). Patterson was at the scene for only for an hour and a half (Ex., 2, Patterson,.

89/19-89/21). During that time, Pattterson did not see tire marks at the time of the crash: "I don't recall seeing these tire marks at the time of the crash". Being shown a photo, Patterson saw what he thought were skid marks, but could not say conclusively that they were from the Peterbuilt. He could only conclude that "they appeared to lead directly to the trailer tires of the - this is the Peterbuilt, is it not." (Ex. 2, Patterson, 33/13-34/4). Since Patterson's deposition testimony about skid marks is inconsistent with what he saw at the time of the crash, it can hardly be the basis of conclusive testimony to eliminate all issues of disputed fact regarding skid marks. Rule 56 F. R. Civ. P. Patterson is not competent to say there were skid marks at the scene when he did not see them.

Whether or not the accident report is admissible as evidence at trial, Robinson may base his expert testimony on this evidence. Rule 703 F. R. Evid.

**F. Federal Motor Carrier Violation are the Proximatel Cause of This Accident.**

Federal motor carrier violations can be the considered the proximate cause of this accident. Plaintiff, in her initial response to Defendant's Motion for Summary Judgment, has recited several violations of the Federal Motor Carrier Safety Regulations with respect to the hiring, supervision and retention of Thompson by FTI. Thompson is admittedly diabetic, but claims that his treatment does not require the use of insulin. (Defendant's brief p.23). Even if Thompson's diabetes is not insulin dependent, the fact that he was declared unqualified to drive when his blood sugar was 2000, makes a high

sugar count a disqualifying factor, in fact. Thompson admitted that at the time he had not been taking his medication. (Thompson, p. 53/20-54/16).

After his disqualification, Thompson was given a one year medical certificate by a person named Barbara Elliott (Exhibit 9), but provided no indication whether or not Elliott is an "advance practice nurse or physician's assistant at a client," as defendant argues. (Defendant's brief p. 22). Thompson did not disclose his three-year driving record and FTI failed to obtained his three-year driving record as required by 49 CFR Sec. 391-21). Thompson admitted that he did not disclose to FTI an accident which he had within the past year, in June of 2004. Thompson admitted that he did not disclose the wreck he had while employed with Dart Transportation. (Thompson, 33/7-33/12). Thompson's explanation that a judge told him he did not have to report this accident where he rear-ended another driver with his commercial vehicle is rank hearsay and does not excuse him from reporting the existence of the accident to FTI. Thompson had not been administered a road test before the accident. Thompson did not complete his road test until September 7, 2004, but his Certificate of Completion is dated September 2, 2004. (Defendant's brief p. 24). Defendant's explanation that "it forgot to change the date on the paperwork" is not credible. Thompson failed to submit to a drug test within 2 hours of the accident as required by 49 CFR Sections 40 and 382. The accident occurred at 3:25 a.m. (Ex. 1, p. 1) and the test was not given until 8:20 a.m. (Ex. 10, nearly five hours later.

Courts have consistently held that violation of highway safety statutes, such as the Federal Motor Carriers Safety Regulations, is prima facie evidence of negligence. *Gauch Meleski,* 346 F. 2d 433 (5th Circuit 1965).

### G. The Collision Caused Morris' Death

Defendant argues that "Sergent Patterson . . . testified that the most common cause of fatalities in one-vehicle accidents involving commercial vehicles is the impact due to the roll-over of a tractor trailer rig." (Defendants brief, p.27). Patterson did not testify that the roll-over in this case, caused the death of Morris. On the other hand, Robinson testified that:

> "My general experience with overturned trucks is that the injuries that Morris received – the very serious injuries that I have never seen before in an overturned truck accident, so I think it highly unlikely that these injuries would have been associated with the overturn. On the other hand, impact by another vehicle at comparable mass at 70 mph or 60 mph would be expected to cause some very serious injuries."

(Ex. 3, Robinson, 19/12-19/22). At best, Robinson's testimony, are drawn from his general experience as a reconstruction expert establishes that Morris' serious injuries (i.e., death) was caused by the collision, not the rollover; at worse, it creates a triable issue whether Morris' death was caused by the collision or the rollover. Robinson testified that the "bilateral injuries" that Morris suffered is evidence that Morris' death was from the collision, not the rollover. (Ex. 3, Robinson, 87/1-87/6). Rule 56 mandates that disputed

issue be submitted to the trier of fact. *Sanderson, supra.*

### H. Negligence/Wantonness Can be Established Even When Speed is Within Limit.

Defendant argues that "Trooper Patterson confirmed that the speed limit in the area of the accident at the time of the accident was 70 mph, the speed Thompson claimed he was driving. (Defendant's brief, p. 32). On the other hand, Dr. Robinson testified "I think Mr. Thompson himself said his was outrunning his lights because he said I couldn't see the truck in time to stop, and if you are driving too fast for the range of your lights, regardless of what's in the road, you are outrunning your lights." This testimony is consistent with the ruling of the Alabama Supreme Court in *Hornady Truck Lines v. Meadows,* 847 So. 2d 908, 911 (Ala. 2002), when it held that a driver was wanton even though he was driving within the posted speed limited, when the conditions of the roadway required a lesser speed.

Defendant, in it brief, cites several "sudden emergency" cases, none of which deals with a sudden emergency where the collision object was stationary, as in the case at bar.

Robinson has testified that since Morris' vehicle was stationary, Thompson could have slowed his vehicle and steered around it. In which case, the accident was avoidable. When Robinson was asked whether or not the accident was avoidable, he testified "yes. . . there was an emergency lane and space beyond that that he could have steered on to. . . .could have gone around the Morris vehicle." (Ex. 3, Robinson, 272/8-273/4).

Robinson's testimony creates a triable issue of whether the accident was avoidable. Robinson's testimony was supported not only by his education and experience but also statistical calculation predicated on "Olsen's Book" of illumination (164/5-164/13) and the stoppingdistances using coefficient of friction. (155/16).

    **I. Plaintiff's Experts Meet the *Daubert* Test**. Defendant challenges LeBleu's qualifications as an expert, simply because he said "it's been such a long time since I've done anything with lighting . . ." (Defendant's brief, p. 36). LeBleu testified not as an illumination expert, but as a electrical expert with respect to the wiring system and battery in the Kenworth T600 driven by Morris. LeBleu is a Board Certified electrical engineer and has over 18 years experience with electrical systems. (Ex. 4, 22/7-22/9). From his inspection of the electrical system in Kenworth T600 trucks, he was able to form an opinion that Morris' lights would remain on after his rollover. (Ex. 4, 96/11-98/110; 99/25)-100/21).

    The defendant attacks the testimony of Robinson on the grounds that he "conducted no effective research to determine the range of Thompson's vehicle headlights." (Defendant's brief, p. 39). Robinson made it clear that his reliance on the range of headlights was taken from "Olson's", an accepted treatise in the field of accident reconstruction. (Ex. 3, Robinson, 163/12-166/8). Unlike the expert in *Khumo Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 146 (1999), the methodology used by Robinson and LeBleu is not attacked by defendants. It has offered no scientific evidence

rebutting the methodologies used by either expert. LeBleu and Robinson meet the "flexible" standard established by *Daubert v. Merrill Dow Pharmaceutical, Inc.,* 509 U. S. 579, 594 (1973).

For further discussion about meeting the *Daubert* test see Plaintiff's Response to Defendants' Motion to Strike Plaintiff's Evidence.

### J. Plaintiff Demonstrated Negligent Entrustment.

Plaintiff showed that (1) a vehicle was entrusted to Thompson; (2) His driver's record indicates that he is an incompetent and reckless driver; (3) FTI knew, or should have known of his recklessness; (4) the wreck in this case was proximately caused by Thompson's speed and (5) Morris was damaged. Defendant argues that Thompson's February, 2003 speeding ticket was in his personal vehicle, while relevant to FMCSR,. (Defendant's brief, p. 42). The fact that he was in his personal vehicle does not ameliorate his propensity to be a reckless driver. Defendant mentions Thompson's August 29, 2002, accident, but omits any discussion of Thompson's June, 2004, accident, where he rear-ended another driver while driving his commercial vehicle e months before the subject accident. (Ex. 6, Thompson, 35/15-36/8).

### K. Defendant Presents no Evidence that Morris was Contributorily Negligent as a Matter of Law.

Defendant offers no credible, admissible evidence that Morris was contributorily negligent. Defendant relies on the testimony of Patterson that "Morris was trying to re-

13

enter I-85 at too great an angle and at too great a speed that caused his vehicle to overturn and block lanes of I-85." (Defendant's brief. p. 45). Such testimony is pure speculation, since Patterson said throughout his deposition "I do not have an opinion as to why this crash had occurred." (Ex. 2, Patterson, 22/8-22/17)

Defendant cites the case of *Ridgeway v. CSX Transportation, Inc.,* 723 So. 2d 600, 606 (Ala. 1998) as authority, but *Ridgeway* involved active negligence on the part of the plaintiff driver, who drove across a railroad track.. *Ridgeway* is inapplicable because the defendant presented no evidence that Morris was engaged in active negligence. There is no evidence that Morris had control of vehicle at the time it came back on the roadway. Patterson was asked whether he had any evidence of contributory negligence. He said "it couldn't be contributory negligence. . ." (Ex 2, 94/14-94/15).

### Conclusion.

Plaintiff has established substantial evidence that Morris' death was proximately caused by defendants' negligence and/or wantonness. Thompson outran his headlights and did not drive at a speed that had due regard for the condition of the roadway and actual and potential hazards thereon. Defendant, Florida Transformer, negligently hired, retained and supervised Thompson. Plaintiff's experts have created disputed issues of material facts. None of defendants' witness have established any evidence of contributory negligence as a matter of law. Based on the foregoing reasons and

authorities, plaintiff's Motion for Summary Judgment is due to be denied.

                                      Respectfully submitted,

                                      _____
                                      /s/  Henry L. Penick
                                      Attorney for Plaintiff
                                      H. L. Penick & Associates, P.C.
                                      319 17th Street North, Suite 200
                                      P.O. Box 967
                                      Birmingham, AL 35201-0967
                                      (205) 252-2538

## CERTIFICATE OF SERVICE

       I hereby certify that the foregoing has been served this the 1st day of September, 2006, by placing same in the United States Mail, first-class postage prepaid and properly addressed as follows:

Richard Broughton
W. Evans Brittain
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, AL 36102-2148                _____

                                        /s/ Henry L. Penick