IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| LORI ANN MORRIS, as administratrix of the estate of Vernell Brian Morris, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:05cv962-MHT |
| | ) | (WO) |
| FLORIDA TRANSFORMER, INC., and EDWARD NEAL THOMPSON, | ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

In this lawsuit, which arises out of a collision between two tractor-trailer trucks on an Alabama interstate highway, plaintiff Lori Ann Morris, as administratrix of the estate of the deceased Vernell Brian Morris, charges defendants Edward Neal Thompson and Florida Transformer, Inc. with the following state-law claims: wrongful death; negligence; negligent hiring, training, supervision, and retention; negligent entrustment; and negligent and wanton violation of state

regulations.   The plaintiff also attempts to assert a

federal claim that the defendants negligently and wantonly

violated Federal Motor Carrier Safety Regulations.[*]   The

_____

     *The plaintiff alleges that the defendants violated
the Federal Motor Carrier Safety Regulations developed
under the Federal Motor Carrier Safety Improvement Act of
1999, 49 U.S.C. § 101 et seq., as prescribed by the U.S.
Department of Transportation, 49 C.F.R. Part 107, Parts
171-180, Parts 382-384, and Parts 390-399.   Although
Plaintiff does not cite to a statute that grants her a
private cause of action under the statute, 49 U.S.C. §
14704(a)(2) is the only provision on which the courts
have relied.   Section 14704(a)(2) provides that, "a
carrier or broker providing transportation or service
subject to jurisdiction under chapter 135 is liable for
damages sustained by a person as a result of an act or
omission of that carrier or broker in violation of this
part."

     One court has found that § 14704(a)(2) creates a
private cause of action for personal injuries, Marrier v.
New Penn Motor Express, Inc., 140 F. Supp. 2d 326 (D. Vt.
2001) (Sessions, J.), while others have held that it only
creates a cause of action for commercial disputes.
Stewart v. Mitchell Transp., 241 F. Supp. 2d 1216, 1220
(D. Kan. 2002) (VanBebber, J.) ("Section 14704(a)(2)
creates a private right of action for damages in
commercial disputes involving violations of the Motor
Carrier Act and its regulations, but not for personal
injury actions such as the one in this case."); Schramm
v. Foster, 341 F. Supp. 2d 536, 547-548 (D. Md. 2004)
(Motz, J.) ("[Section 14704(a)(2)] was intended to apply
only to commercial damages, not personal injuries.");
Crosby v. Landstar, No. Civ. 04-1535-SLR, 2005 WL 1459484
                                      (continued...)

2

plaintiff invokes the court's jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship) and 1367 (supplemental).

This case is currently before the court on the defendants' motion for summary judgment. The motion will be granted.


## I.   SUMMARY-JUDGEMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. <u>Celotex Corp. v.</u>

---

*(...continued)
(D. Del. June 21, 2005) (Robinson, C.J.) ("Section 14704 does not give this court jurisdiction over negligence claims.").

This court need not reach this issue.

<u>Catrett</u>, 477 U.S. 317, 323 (1986); <u>see</u> <u>also</u> <u>Fitzpatrick v.</u>
<u>City of Atlanta</u>, 2 F.3d 1112, 1115-17 (11th Cir. 1993)
(discussing how the responsibilities on the movant and the
nonmovant vary depending on whether the legal issues, as
to which the facts in question pertain, are ones on which
the movant or nonmovant bears the burden of proof at
trial).  In making its determination, the court must view
all evidence and any factual inferences in the light most
favorable to the nonmoving party.  <u>Matsushita Elec. Indus.</u>
<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).
Thus, at the summary-judgment stage, the court assumes
that the facts are as the plaintiff alleges and makes all
reasonable inferences in favor of her as the nonmoving
party.


## II. FACTS

At approximately 3:25 on the morning of September 4,
2004, while traveling north on I-85 in Macon County,
Alabama, the decedent's tractor-trailer truck swerved into

4

the median, struck a road sign and drainage ditch, came back up the embankment onto the north-bound lane of I-85, and rolled over onto the driver's side.  When the truck came to rest, part of the tractor was on I-85 and part of the trailer had come to rest off the highway, on the median.

Thompson was traveling north on I-85 when he noticed the decedent's truck blocking the road.  He slammed on his brakes, but his tractor-trailer nonetheless collided with the decedent's disabled tractor-trailer in the left lane of the two lanes.  At the time he saw the decedents's truck, Thompson was driving within the 70-mile-per-hour speed limit, his headlights were on, and the road was dry; Thompson was an employee of Florida Transformer, Inc. and had a co-employee in his truck at the time of the accident.

### III.  DISCUSSION

With this lawsuit, as stated, the plaintiff attempts to assert a number of state and federal claims, based on wrongful death, negligence, wantonness, and violation of various regulations.  Critical to all these claims is whether Thompson was the proximate cause of the decedent's death; absent this proximate cause all the claims must fail.

The only evidence the plaintiff submits to support that Thompson's collision with the decedent's truck, and not the roll-over accident, was the proximate cause of the decedent's death is the testimony of her accident-reconstruction expert, Edward L. Robinson, Ph.D.  Robinson states that, with his "general experience with overturned trucks," he has never seen injuries as severe as the decedent's in an overturned truck accident; that it is, therefore, highly unlikely that the decedent's injuries were associated with the overturn; and that, instead, the impact with Thompson's vehicle at 60 or 70 m.p.h. "would

be expected to cause some very similar injuries." Robinson Depo. p. 19. The defendants object to Robinson's testimony as inadmissible under Fed. R. Evid. 702.

The Federal Rules of Evidence govern the admissibility of expert testimony. <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u> 509 U.S. 579, 587 (1993). Under the federal rules, the trial judge serves a gatekeeping function, making both a 'relevance' and a 'reliability' determination, that is, disallowing expert testimony when it will not be helpful to the trier of fact or when it lacks a reliable foundation. <u>Id</u>. at 589. A trial judge performs this gatekeeping function by applying the Federal Rules of Evidence, particularly Rule 702. Rule 702, as amended effective December 1, 2000, provides:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the

product of reliable principles and
methods, and (3) the witness has applied
the principles and methods reliably to
the facts of the case."

The burden is traditionally placed on the proponent
of expert testimony to establish that such admissibility
requirements have been met by a "preponderance of the
evidence." Allison v. McGhan Medical Corporation, 184
F.3d 1300, 1312 (11th Cir. 1999) ("the proponent of the
testimony does not have the burden of proving that it is
scientifically correct, but that by a preponderance of the
evidence, it is reliable"); Fed. R. Evid. 702, advisory
committee notes, 2000 amendment.

In Daubert, the Supreme Court set forth a list of
factors that may guide the trial judge's Rule 702 decision
as to whether expert testimony might reliably assist the
factfinder, including:  whether a theory or technique can
be or has been tested; whether a theory or technique has
been subjected to peer review or publication; whether a
theory or technique has gained widespread acceptance
within a relevant community of experts, or, rather, has

been unable to garner more than minimal support; and the known or potential rate of error of a technique, and the existence and maintenance of standards controlling the technique's operation.  509 U.S. at 593-594.

These Daubert factors are not, the Supreme Court has emphasized, appropriately used as a "definitive checklist" but should instead be understood as non-exclusive, nondispositive considerations that may shape the trial judge's "flexible inquiry" under Rule 702.  Id. at 594. Moreover, the trial court's Rule 702 gatekeeping responsibilities obtain equally for all expert testimony, not just scientific testimony.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 142 (1999).  The Daubert-type analysis should not be used to disfavor expert testimony grounded in experience or engineering practice rather than in pure scientific theory.  Id. at 150.  However, "if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient

basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply taking the expert's word for it."  Fed. R. Evid. 702, advisory committee notes, 2000 amendment (internal citations and quotations omitted).

"While the inquiry into 'reliable principles and methods'" has been a familiar feature of admissibility analysis under <u>Daubert</u>, Rule 702 appears to require a trial judge to make an evaluation that delves more into the facts than was recommended in <u>Daubert</u>, including as the rule does an inquiry into the sufficiency of the testimony's basis ('the testimony is based upon sufficient facts or data') and an inquiry into the application of a methodology to the facts ('the witness has applied the principles and methods reliably to the facts of the case')."  <u>Rudd v. General Motors Corp.</u>, 127 F.Supp.2d 1330, 1336 (M.D. Ala. 2001) (Thompson, J.).  "Neither of these two latter questions that are now mandatory under

the rule--the inquiries into the sufficiency of the testimony's basis and the reliability of the methodology's application--were expressly part of the formal admissibility analysis under <u>Daubert</u>." <u>Id</u>.

Despite this express provision for judicial evaluation of such factually entwined matters, however, the advisory committee notes caution that the trial judge must still avoid usurping the role of the trier of fact:

> "[The revised rule] is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.... [T]he rejection of expert testimony is the exception rather than the rule. <u>Daubert</u> did not work a seachange over federal evidence law, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

Fed. R. Evid. 702, advisory committee notes, 2000 amendment (internal citations and quotations omitted).

The court also appreciates that it is engaging in its Rule 702 analysis on a summary-judgment motion. As a result, two additional points must be made. First, while the court is making its admissibility decision on the basis of the record already before it and without a hearing, the parties have had an adequate opportunity to submit arguments and evidence. A trial court is entitled to make a decision on the admissibility of expert testimony without a hearing, on a summary-judgment motion, if the parties have had an adequate opportunity to present evidence and argument on the issue and the record reflects, as it does here, that the material facts related to the admissibility issue are not in dispute. Rudd, 127 F.Supp.2d at 1334 n. 3 ("For purposes of the present summary-judgment motion ..., this court will make the [Rule 702] admissibility decisions ... on the basis of the record already before it.") (citations omitted). Indeed, it is evident from the parties' submissions that they

expected the court to make its Rule 702 decision without an evidentiary hearing on the current record.

Second, the Rule 702 "sufficiency-of-basis inquiry is formally quite distinct from the [Fed. R. Civ. P. 56] sufficiency-of-evidence inquiry involved in summary-judgment analysis, that is, Rule 702 mandates a determination of whether the expert had sufficient evidence (evidence which itself may or may not be admissible) to support his or her testimony, not a determination of whether that testimony standing alone provides sufficient evidence to allow a reasonable fact-finder to find for the plaintiff on an issue of substantive law. See, e.g., Fed. R. Evid. 702, advisory committee notes, 2000 amendment (under the new rule, for purposes of determining the sufficiency of the basis of an expert's testimony, the expert's 'facts or data' may include inadmissible testimony, hypothetical facts and the reliable opinions of other experts). Rudd, 127 F.Supp.2d at 1336-1337 n. 5. Although these two inquiries may often

turn out to resemble each other, they must be kept separate if the court is to remain faithful to Rule 702's and Rule 56's separate purposes.

Applying these principles and in performance of its gatekeeping function, this court concludes that Robinson's expert testimony is inadmissible, for it fails to meet any of Rule 702's requirements. First, Robinson has not been qualified as an expert on cause of death by "knowledge, skill, ... training, or education." Fed. R. Evid. 702. Robinson admitted in his deposition that he is not a medical doctor; he has no formal medical training; he is not a cause-of-death expert; he has no training, and is not an expert, in biomechanics; he does not hold himself out as an expert on what specific injuries cause death; and, here, he has no opinion to a reasonable degree of medical/biomechanical engineering certainty as to what caused the decedent's death. Robinson Depo. p. 17-20; 85-88.

Instead, Robinson attempts to rely on his experience to conclude that Thompson's collision with the decedent's truck caused the decedent's death. However, his experience is also inadequate to qualify him under Rule 702. Although he seems to have extensive experience as an accident reconstructionist, he has not demonstrated adequate experience in determining cause of death. There is no evidence of the nature and types of accidents Robinson has investigated in the past and, specifically, of what he learned, through his experience, about the various and differing causes of death in accidents similar to one in which the decedent died. In fact, as already stated and as indicated in his deposition, Robinson does not even consider himself to be an expert in determining cause of death:

> "Q: You don't hold yourself out as an expert in this case being able to determine cause of death?
>
> "A: Oh, no. No."

Robinson Depo. p. 17.  <u>See</u> <u>Montgomery v. Noga</u>, 168 F. 3d 1282 (11th Cir. 1999) (excluding an expert's opinion because the issues to which the expert testified were distinct from his area of expertise); <u>Kyser v. Harrison</u>, 908 So. 2d 914, 919-920 (Ala. 2005) ("an expert may not testify to his opinion on matters outside of his field of training and experience").

Second, Robinson's "testimony is [not] based upon sufficient facts or data."  Fed. R. Evid. 702.  His conclusion, as indicated in his deposition, is simply based on the facts that he gleaned from his review of the decedent's injuries in the autopsy report:

> "Q: But you don't know what injuries caused his death?

> "A: I haven't--all I've done is look at the autopsy report.  I haven't tried to make any determination beyond that."

Robinson Depo. p. 86.  The evidence does not show how the autopsy report, standing alone, is sufficient to allow Robinson to opine what caused the decedent's fatal injuries--that is, whether it was the initial rollover

of the decedent's truck or Thompson's collision with the decedent's disabled truck sprawled across the roadway. To conclude from the autopsy report that the decedent's death was caused by the collision between the decedent's and Thompson's trucks, rather the earlier rollover of the decedent's truck, would be a leap based on faith rather than any evidence.

Third, there is no evidence that Robinson used "reliable principles and methods" to reach his conclusion on cause of death. Fed. R. Evid. 702. Robinson analyzed the force of the Thompson collision on the decedent's truck to conclude that such a tremendous force was greater than what his seatbelt was designed to withstand. Robinson also opines that, based on his experiences with roll-over accidents, he has never seen injuries as severe as those sustained by the decedent. Therefore, according to Robinson, the second collision is likely to have caused the injuries indicated in the decedent's autopsy report. This methodology might have

been sufficient if there was only one accident. However, when looking at cause of death in a multiple-accident scenario, it makes sense to look at each accident separately in order to determine which collision caused the fatal injury. Robinson's methodology is inadequate to determine, with sufficient certainty, that the decedent should have survived the rollover and thus must have died from the collision. In deed, Robinson admits that people have been fatally injured in roll-over accidents.

Moreover, instead of clarifying this significant issue, the plaintiff merely suggests that Robinson's testimony creates a factual issue for the jury to decide. But, as explained earlier, the plaintiff confuses the different purposes of Rule 702 and Rule 56. Robinson's testimony could create a Rule 56 factual issue only if it has first passed Rule 702's reliability requirement.

Finally, the plaintiff having failed to meet Rule 702's first requirements (that Robinson is "qualified as an expert by knowledge, skill, experience, training, or education" and that his "testimony is based upon sufficient facts or data" and "is the product of reliable principles and methods"), it follows perforce that she cannot meet Rule 702's last requirement that it be shown that Robinson "applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Accordingly, Robinson's expert testimony on the decedent's cause of death is inadmissible under Rule 702 and will not be considered by the court. In short, the plaintiff has not, among other things, explained "how [Robinson's] experience leads to the conclusion reached, why that experience is a sufficient basis for [his] opinion, and how [his] experience is reliably applied to the facts." Fed. R. Evid. 702, advisory committee notes, 2000 amendment (internal citations and quotations

19

omitted).    "The trial court's gatekeeping function requires more than simply taking the expert's word for it." Id.

The court's Rule 702 conclusion to exclude the plaintiff's expert testimony on causation leaves the separate Fed. R. Civ. P. 56 question of whether the remaining evidence is sufficient to create a triable issue of fact.  Because the defendants have met their burden of showing there is no admissible evidence to show that Thompson caused the decedent's death, the defendants are entitled to summary judgment of the causation issue, and thus on all claims.  Fitzpatrick, 2 F.3d at 1115-16 ("For issues ... on which the non-movant would bear the burden of proof at trial, ... the moving party [for summary judgment] simply may show[]--that is, point[] out to the district court--that there is an absence of evidence to support the non-moving party's case.") (citations and quotation marks omitted).

20

An appropriate summary judgment in favor of the defendants will be entered.

DONE, this the 5th day of October, 2006.

\_\_\_\_\_/s/ Myron H. Thompson\_\_\_\_\_
UNITED STATES DISTRICT JUDGE