IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LORI ANN MORRIS, ADMINISTRATRIX, ) ) ) PLAINTIFF, ) ) vs. ) ) EDWARD NEAL THOMPSON, et al., ) ) DEFENDANTS. ) | CIVIL ACTION NO.: 3:05-CV-962-T |

**PLAINTIFF'S BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION FOR RECONSIDERATION**

Comes now the Plaintiff and submits the following as her Brief in Support of her Motion for Reconsider:

1. <u>Plaintiff's Expert Testimony on Cause of Death Is Admissible Based on His Experience</u>.

This court has concluded that "applying these principles of and in the performance of its gatekeeping function, this Court concludes that Robinson's expert testimony is inadmissible, for it fails to meet any of Rule 702's requirements." (Opinion, p. 14). This exclusion of Robinson's expert testimony is contrary to the mandates of Fed. R. Evid. 702. This Rule disfavors the exclusion of expert testimony.

> "The rejection of expert testimony is the exception rather than the rule. *Daubert* did work a seachange over federal evidence law, and the trial court's role as gate-keeper is not intended to serve as a replacement for the adversary system. Vigorous

> cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendment (Internal citations omitted). In this case, the Court uses it own former opinion in *Rudd v. General Motors Corp.,* 127 F. Supp. 2d 1330, 1336 (M.D. Ala. 2001) (Thompson, J.), for the proposition that

> "While the inquiry into 'reliable principles and methods'" has been a familiar feature of admissibility analysis under *Daubert*, Rule 702 appears to require a trial judge to make an evaluation that delves more into the facts than was recommended in *Daubert,* including as the rule does an inquiry into the sufficiency of the testimonies basis ('the testimony is based upon sufficient fact or data') and an inquiry into the application of a methodology to the facts ('the witness has applied the principles and methods reliably to the facts of the case')."

Since Robinson admitted that he is not a cause of death expert by knowledge, skill, training or education. The remaining question is whether his knowledge, skill, training, education <u>or experience</u> is sufficient to allow him to express an opinion about the cause of death. None of the analysis of the new Rule 702 requires that an expert "hold himself out" as a cause of death expert to express an opinion about the cause of death." Admittedly, an expert might rely on other reliable information and data to express and opinion. (Opinion, p. 13).

In this case, Robinson relied on the autopsy report, written by a medical doctor, which described the cause of death as "blunt force injury." The cause of death is

established by the autopsy report, the remaining question is which force, the rollover or the collision caused the blunt force injury and hence, the death. Robinson, holds a Doctorate in Physics, and a Board Certified Accident Reconstructionist. He has investigated what force causes what injuries for the past forty (40) years, and was qualified to express an opinion that would aide the jury into deciding which force caused the death. Defendants have not objected to the admission of the autopsy. It is admissible evidence that establishes the cause of death.

When Robinson was asked whether or not he held himself out as a cause of death expert, he was referring to his education, alone. The complete answer to the questions whether he held himself out as an expert capable of determining cause of death is as follows:

> "Q: You don't hold yourself out as an expert in this case being able to determine cause of death?
>
> "A: Oh, no. One thing that you were asking about formal education, I would go to experience also. At one point I had a joint appointment in the forensic science department from the justice program, a graduate program. And I did for a period of time give lectures in one of their introductory graduate courses, a couple hour lectures on accident reconstruction."

(Robinson depo., p. 17).

Clearly, Robinson is experienced as a physicist, an engineer, and an accredited accident reconstructionist. This court cites the case of *Kyser v. Harrison*, 908 So. 2d 914, 919-920 (Ala. 2005) for the proposition that "an expert may not testify to his opinion on

matters outside of his field of training and experience." In the case at bar, Robinson did not testify on matters outside of his field of training and experience, because the autopsy report established the cause of death, his testimony was to determine whether blunt force described in the autopsy report could have been caused by the rollover or the collision, which was no longer exclusively a medical decision. When asked whether or not a medical decision was required to make his conclusions Robinson answered in the negative.

> Q: But you don't know what injuries caused his death?
>
> A: I haven't- - All I've done is look at the autopsy report. I haven't tried to make any determination beyond that.
>
> Q: And it would be fair to say that Mr. Morris could have received fatal injuries in this case during the rollover?
>
> A: I don't believe that. Because he's belted in, and I don't believe he would have ejected the simple rollover with his seat belt on.
>
> Q: We don't know - - you don't know from - - Because you're not a medical expert you don't know whether or not he received fatal injuries, do you?
>
> A: Well, I don't think a medical expert could necessarily tell you that. He could tell you what the - - what injuries were associated with the fatality. But I don't think you got the kind of forces involved with the rollover by a factor of ten or one hundred to cause the kind of injuries that you can get from these impacts.

(Robinson depo., p. 86-87).

    2. <u>Robinson's Testimony Was Not Premised "Solely or Primarily" on Experience</u>

The court observed in its opinion:

> "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."

The court concluded that: "to conclude from the autopsy report that the decedent's death was caused by the collision between the defendants' and Thompson's truck, rather than the earlier rollover of the decedent's truck would be a leap based on faith rather than any evidence." This ascertion is not supported by the evidence. Robinson's conclusion is grounded in the medical opinion of a medical doctor, his knowledge of the laws of the science of physics and his 40 years experience as an accident reconstructionist. To the extent he relied on medical opinion and forces calculated by the laws of the science of physics, Robinson's opinion is not based "solely or primarily on experience," as this has suggested in its analysis. (Opinion p. 9-10).Robinson testified that the bilateral injuries shown in the autopsy report could not be caused by a rollover onto the left side of the truck.

> Q. Well, you're not ruling out the fact that Mr. Morris could have been fatally injured during the rollover in this case.
>
> A. In my mind, yes. Because he nature of the injuries is not such that would be on the left side of his body. I mean, he would have bilateral injuries. And that's not going to happen when he put - from that rollover.

(Robinson depo., p. 85-86).

The autopsy report was written by Steven Boudreau, M.D., State Medical Examiner. (Exhibit 1, Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Evidence). Dr. Boudreau concluded "based on the findings of this examination and the presently known circumstances of the death, it is my opinion that the cause of death is Blunt-Force Injury. The manner of death is Accident. (*Id.,* p. 12).

  3. <u>Robinson Used Reliable Principals and Methods</u>

The third contention that this court makes that: "there is no evidence that Robinson used 'reliable principal and methods' to reach his conclusion of cause of death is equally supported by the evidence.." (Opinion p. 17). The court recognized, Robinson analyzed the force of the Thompson collision on the decedent's truck and concluded such a tremendous force was greater than what his seatbelt was designed to withstand," (*id.)* Robinson estimated that the tensile strength of the seatbelt was 5,000 or 6,000 lbs. (Robinson depo., p. 94). On the other hand, the collision impact of Thompson's truck traveling 60 to 70 mph produced "10s of G's" of force that would cause a 100 lb (such as Morris) to weigh 10,000 lbs for a few milliseconds, hence the bounce back from the seat then can stretch that belt very readily. We're talking about tremendous force." (Robinson depo., p. 94-95). (Exhibit 9 to plaintiff's response). Upon examination Robinson was asked:

> Q. You're not testifying today either way as to whether or not the fatal injuries to Mr. Morris were caused by the seatbelt."

> A. I don't know. It's certainly possible in the kind of impact

>   that he got that just the inertia forces and the weight of his
>   body would have done significant damage like breaking
>   bones."
>
>   Q.  Have you ever worked in a case for either side where there
>   was a fatality in a rollover?
>
>   A.  I am sure I have.  I can't put my finger on one right now,
>   but, yeah, it is not uncommon for fatalities in rollovers with
>   cars.

(Robinson depo., p. 85).

When the court indicated that "Robinson admitted that people have been fatally injured in rollover accidents," (Opinion, p. 18), it failed to qualify the comment that rollover deaths were not uncommon in car accidents.  This is a truck accident, besides whether or not it is <u>possible</u> for a person to be fatally injured in a rollover accident has no relevancy to this case.  The relevant question is, given the nature of this rollover in this case, is it <u>probable</u> that the rollover caused the death.  This question Robinson answered in the negative.

>   Q.  Well you're not ruling out the fact that Mr. Morris could
>   have been fatally injured during the rollover in this case.
>
>   A.  In my mind, yes.  Because the nature of the injuries is not
>   such that would be on the left side of his body.

(Robinson's depo. p. 85-56).   Dr. Boudreau, who did the autopsy recognized "fractures of the first through fifth rib on the right, and fractures of the first through 7 rib on the left.  (Plaintiff's response Exhibit 1, p. 4).  From this, Robinson was able to conclude that bilateral injuries could not have occurred from the rollover and that there

was no injury significant to the left side, alone, that would suggest death from rollover. (Robinson depo., p. 6).

    4. <u>Robinson Applied Principals and Methods Reliably to the Facts</u>

The court concludes that Robinson does not pass the Rule 702 test because he cannot meet Rule 702's last requirement that it be shown that Robinson "applied the principals and methods reliably to the facts of the case." (Opinion, p. 19). First, the defendant did not attack Robinson's methodology, nor did it put forth competing expert testimony to certify that Robinson's methodology was unreliable. While plaintiff appreciates the court's "gatekeeping" function, it also should rest its opinions on issues raised by the parties. Defendant did not seek a *Daubert* or "reliability" hearing on admissibility of Robinson's evidence. In the notes of the advisory committee on 2000 amendments to Rule 702, the advisory committee observed:

> As the court in *Daubert* stated: vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. . . Likewise this amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert. See *Kuhmo Tire Co. v. Carmichael,* noting that the trial judge has the discretion "both to avoid unnecessary 'reliability proceedings in ordinary cases where the reliability of an expert's method is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the experts reliability arises."

As this court observed in its opinion (p. 13):

> Rule 702 mandates a determination of whether the expert had

>sufficient evidence (evidence which itself may or may not be admissible) to support his or her testimony, not a determination of whether that testimony standing alone provides sufficient evidence to allow a reasonable fact-finder to find for the plaintiff on a issue of substantive law.

In case at bar, Robinson applied his knowledge of physics to the facts. So if we'd start him [Thompson] off at 70 mph and decelerate him at .6 G's for 144 feet - - 144 feet - - 144.7 feet, what's his final speed. And it turns out to be about 23.8 24 miles per hour. The damage to thevehicle is very much in consistent with that kind of collision speed.

(Robinson depo. pp. 141-42. On the other hand he testified: The way the trucks roll over in all the tests I've seen, they're not fast rollover. It's a fairly slow roll . . . May I say also that if the truck is moving forward and he feels some upward acceleration, it's going to be of the order of half a G. That's the sort of drag factors you get with the trailer on the side. (Robinson depo pp. 76-77, 78)  In the case at bar, Robinson testified that "I'm just basing it (his opinion) on experience looking at other vehicle wrecks over the last 40 years as to what kind of forces won't cause what kind of injuries." In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 255; 19 S. Ct. 1167, 1178; (1999), the Supreme Court observed: "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." In the case at bar, Robinson relied on his specialized experience (and training) to eliminate what kinds of force would not cause certain injuries. The force of this rollover he concluded was insufficient to cause death.

Oddly enough, this court, in *Rudd v. General Motors Corp.*, 127 Fd Supp.

1330,143 (N.D. 2001), endorsed the methodology of eliminating alternative possible causes. The court observed in *Rudd* Edmondson's, [plaintiff's exper's] method for settling on the cause for the fatigue-fracture through a process of eliminating alternative possible causes is, by preponderance of the evidence, a reliable one." In *Rudd*, Edmondson's expert opinion resulted primarily from his "own past experience and training analyzing metal fractures, including laboratory induced fractures and a 'real world' automobile fan fatigue fracture." (*Id.*) In endorsing Edmondson's methodology, this court observed "when an expert relies upon a process-of-elimination for testimony for specific causation, 'the fact that several possible causes might remain uneliminated' goes to the weight rather than the admissibility of his testimony." *Rudd* at 1344, citing *Ambrosini v. Labarraque,* 103 Fd 3d 129, 140 (D.C. Cir. 1996).

  In the case at bar, this court has failed to follow its own lead by excluding Robinson's process-of-elimination testimony. The trial judge's gatekeeping inquiry, when properly conducted, avoids usurping the role of the trier of fact said the *Daubert* court, because the court's 'focus . . . must be solely on principals and methodology, not the conclusion that they generate.' *Rudd* at 1334, citing 1335 citing *Daubert*, 509 U.S. at 595, 113 S. Ct. at 2797. Robinson's methodology of investigating vehicle crashes in the real world and utilizing his knowledge, skill and training as a physicist and an accident reconstructionist, is as legitimate as the methodology used in *Rudd*. Nevertheless, the court in the case at bar, has usurped the role of the trier of fact.

  The role of the court at the summary judgment stage is not to weigh the evidence

or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Rudd* citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 1986). In the case at bar, the court, in order to evaluate Robinson's "reliable principals and methods" has impermissibly weighed the evidence at this summary judgment stage.

## CONCLUSION

Based on the foregoing, this court abused its discretion in excluding plaintiff's expert testimony. Plaintiff respectfully requests this court to reconsider its ruling excluding the opinion of plaintiff's expert, Robinson, and reinstate this case to the trial docket.

Respectfully submitted,

/s/ Henry L. Penick
Henry L. Penick
Attorney for Plaintiff

**OF COUNSEL**
H. L. Penick & Associates, P.C.
319 17th Street North, Suite 200
P.O. Box 967
Birmingham, AL 35201-0967
Telephone: (205) 252-2538
Fax: (205) 251-0231

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served this the 27th day of October, 2006, by placing same in the United States Mail, first-class postage prepaid and properly addressed as follows:

W. Evans Brittain
Ball, Ball, Matthews & Novak, P.A
2000 Interstate Park Drive  - Suite 204
P.O. Box 2148
Montgomery, AL 36102-2148

                                        /s/ Henry L.Penick